SONE v. WILLIAMS, *Appellant.*

In Banc, November 19, 1895.

1. **Election Contest**: JURY TRIAL: APPEAL. The denial of a jury trial in a contested election case will not be reviewed on appeal where no complaint on that ground was made in the motion for a new trial or in arrest.

2. ———: NOTICE. The omission to recite in a notice of an election contest that the contestee had received the certificate of election will not affect the sufficiency of the notice.

3. ———: BALLOTS: SECOND RECOUNT. It is improper to order a *second* recount of the ballots by the county clerk in an election contest on affidavits alleging or information and belief that the ballots had been tampered with, but which failed to specify any substantive fact by which such charges were expected to be proved.

4. ———: RECOUNT: POSSIBILITY OF TAMPERING WITH BALLOTS. A recount of the ballots in an election contest should not be rejected merely because there was possible opportunity to tamper with the ballots.

*Appeal from Cole Circuit Court.*—A. M. HOUGH, ESQ., Special Judge.

AFFIRMED.

*Moore & Williams, S. D. Chamberlin,* and *C. Waldecker* with *W. M. Williams* for appellant.

(1)    The motion to quash the notice of contestor should have been sustained. While the statute does not require any formal pleading the notice ought to be sufficient to give the court jurisdiction, and to show that the contestant is entitled to the relief sought. The notice supplies the place of both the petition and summons in an ordinary civil suit.    *State ex rel. v. Smith,* 104 Mo. 667; *Whitney v. Blackman,* 17 Ore. 564; *Canton v. Ryan,* 26 Pac. Rep. 258; *Virgil v. Brandt,* 4 N. M. 374; *Gumm v. Hubbard,* 97 Mo. 312.    (2)    There could be no contest, unless the contestee had received the certificate of election; the statute contemplates this. R. S. 1889, secs. 4707, 4708. It is not alleged. There is no allegation that contestant was a candidate; yet the court permitted these facts to be shown in evidence. There is no allegation that the votes were even counted or canvassed.    Paine, Elec. 824; McCrary, Elections, [2 Ed.], sec. 276; *Howard v. Shields,* 16 Ohio St. 186. (3)    The motion of contestee for a reexamination, recount and inspection of the ballots on his application should have been sustained by the trial court. *Gumm v. Hubbard,* 97 Mo. 319.    (4)    "When fraud is alleged a recount should be ordered, as a matter of course, upon

the request of the complaining party." *Clanton v. Ryan*, 24 Pac. Rep. 258; *Pedigo v. Grimes*, 11 West. Rep. 341. (5) An election contest is a case at law in this state; in some states courts of equity have jurisdiction. *Gumm v. Hubbard*, 97 Mo. 321; Const., art. 8, sec. 9. Appellant was entitled to a jury trial. The right seems to be taken for granted by this court in the case of *Turner v. Drake*, 71 Mo. 285; see p. 288. The section of the constitution quoted *supra* is perhaps somewhat obscure, but can it be said to contradict the broad provisions of sections 28, article 2 of the constitution? A trial by a jury would unquestionably be a common law right, if not abrogated by the sections first quoted. It is true that in many of the states the right to a jury trial is denied as in Pennsylvania, Indiana, Illinois, while in others the right is conceded. *People v. Livingston*, 25 Hun (N. Y.), 59; *Duson v. Thompson*, 32 La. Ann. 861; *People v. Cilote*, 16 Mich. 283; *Seaton v. Swem*, 58 Iowa, 41. And formerly under the common law in Indiana. *Reynolds v. State*, 61 Ind. 393. See, also, Cooley, Const. Lim. [1 Ed.] p. 625, and citations. (6) The trial court erred in refusing to permit the ballots called for by contestee to be produced in court and offered in evidence to be followed by the testimony of nearly forty voters to prove that their ballots had been fraudulently changed in favor of contestant after they were cast and counted, at the election. R. S. sec. 4672. This section is broad in its provisions and is not limited by the section governing the recount by the county clerk. (7) The report of the county clerk on the result of the recount for the office of sheriff should not be deemed as conclusive. Even as *prima facie* evidence of such result, it is not sufficient to overcome the result of the official canvass, which gave the certificate of election to the contestee. The evidence admitted by the court without objections, furnishes

more than a mere suspicion of forgery and fraud, by somebody after the official count was made. Some of that evidence may be said to be hearsay, but it is in the case, given without objections. (8) After the evidence was concluded the trial court should have sustained the renewal motions for a reopening, re-examination and inspection of the ballots; the evidence offered clearly demanded this course. (9) The trial court certainly erred in refusing the third declaration of law offered by the contestee. See *State ex rel. v. Lesueur*, 29 S. W. Rep. 278.

*Silver & Brown, W. S. Pope*, and *Dante Barton* for respondent.

(1) The trial court committed no error in overruling contestee's second motion for a second recount, and second reexamination of the ballots complained of in his brief. The statute does not authorize a second recount. R. S. 1889, secs. 4721–4727. (2) A recount being a special statutory proceeding, the statute relating thereto must be strictly construed. *Smith v. Haworth*, 53 Mo. 88; Sedgwick on Const. and Stat. Law [2 Ed.] pp. 277, 279. And the foregoing proposition is specially true in view of the restrictive provision of the constitution as to secrecy and the examination of ballots even in an election contest. Const. of Mo., art. 8, sec. 2. (3) Appellant having filed a motion for a second recount and the same having been overruled, it could not be successfully renewed. The first decision is in the nature of *res judicata*. *Clagget v. Simes*, 25 N. H. 402. See, also, *State ex rel. v. Boothe*, 68 Mo. 546. (4) And an order made upon motion is a bar to a subsequent motion for the same relief, although the subsequent motion be founded on grounds not raised on the first motion, if they might have been ascertained and pre-

sented had due diligence been used. *Bank v. Hanser,* 15 Abbott's New Cases, 488. The grounds, however, for the two motions in this case were the same. The reopening of a case for newly discovered evidence is a matter largely resting in the discretion of the trial court, and the trial court's action in that regard will not be reviewed, unless manifestly abused. *Mayor, etc. v. Burns,* 114 Mo. 426, and cases cited. Evidence ought to be decisive and produce different result. (*Ibid.*) The foregoing is specially true as to a second motion for the same relief. (5) The second application for the second recount was righly overruled on the merits of the motion. Neither the application nor affidavits in support of same authorizes a review of the discretion of the trial court in denying the recount. *First.* The obvious object of the recount is to secure the number of the votes and the names of the voters of republican ballots on which contestee's name is erased and contestant's is inserted. Contestee had this opportunity all during their count, and it was his own fault that he did not avail himself of it. He does not show diligence. New trials will not be granted for newly discovered evidence, where the new facts are to be proved by a witness who has already testified. *Cook v. Railway,* 56 Mo. 380. *Second.* The counter affidavits filed by contestant in opposition to the motion for a recount were competent. They are permitted in analogous cases. *State v. Sansone,* 116 Mo. 14; *State v. McCoy,* 111 Mo. 517; *State v. Baily,* 94 Mo. 311; 2 Thompson on Trials, sec. 2760. (6) The trial court did not err in denying to contestee a trial by jury. *First.* A trial by jury does not extend to election contest cases. *Williamson v. Lane,* 52 Tex. 335; *Pedigo v. Grimes,* 113 Ind. 145. *Second.* The statute (R. S. 1889, sec. 4710) provides that "every court authorized to determine contested election cases shall hear and de-

termine the same in a summary manner, without any formal pleadings.'' A trial by the court is clearly contemplated by the statute. *Third.* Even if this case were an ordinary civil case, yet, the issue not being for the recovery of money only, or for specific real or personal property, it is not triable by a jury. R. S. 1889, secs. 2131, 2132. *Fourth.* Again, contestee did not, in his motion for a new trial, assign the refusal of a jury trial as ground of error, and the matter is not now open to review in this court. *Atkinson v. Dixon*, 96 Mo. 582. (7) The trial court committed no error in refusing the declarations of law as asked by contestee. *First.* It is a primary rule of elections that the ballots constitute the best and primary evidence of the intentions and choice of the voters. *People v. Holden*, 28 Cal. 123; *Hudson v. Solomon*, 19 Kan. 177; *State, etc., v. Judge*, 13 Ala. 805. *Second.* Where the statute provides that the ballots shall be kept in a certain way, and they are in the hands of the proper officer, it is presumed that he has done his duty, and the burden of proof is upon those assailing them to show that they have been tampered with. *People v. Holden*, 28 Cal. 123. *Third.* That officers are presumed to perform their duties has been frequently decided in this state. *Lenox v. Harrison*, 88 Mo. 496; *Leonard v. Sparks*, 117 Mo. 103; *State, etc., v. Bank*, 120 Mo. 161. *Fourth.* And even where it is held, that the burden of proof to show that the ballots have not been tampered with is on the contestant or the party producing the ballots, yet he is not required to satisfy the trier of the facts beyond a mere possibility of interference, ''but that they were intact to the satisfaction of the jury.'' *People ex rel. v. Livingston*, 79 N. Y. 279; *Hudson v. Solomon*, 19 Kan. 177. (8) The fact that the county clerk opened some of the ballot boxes to withdraw

therefrom the tally sheets and poll books improperly placed therein by the election officers did not invalidate the ballots as primary evidence, even conceding (which we do not admit) that the action of the county clerk was illegal. *Dorey v. Lynn*, 31 Kan. 758. (9) The special finding of the trial court in this case that the ballots had not been changed or tampered with, and that the county clerk returned in his report all that either party required, is conclusive in respect to those matters on this appeal. *Godman v. Simmons*, 113 Mo. 122; *Magee v. Burch*, 108 Mo. 336; *State v. Ihrig*, 106 Mo. 268. (10) The appellant in his motion for a second recount does not complain of any refusal on the county clerk's part to permit a re-examination or recount before the same was finally closed. Appellant is necessarily restricted to the grounds of complaint set out in his motion. 109 Mo. 345; 52 Mo. App. 92.

GANTT, P. J.—This is an appeal from the judgment of the circuit court of Cole county in a contested election for the office of sheriff of said county.

At the general election held on November 6, 1894, Charles F. Williams and Samuel H. Sone were candidates for the office of sheriff. On the face of the returns as cast up and certified by the judges of election in the several precincts Charles F. Williams, the contestee, received a majority of thirteen votes.

On November 14, 1894, contestant Samuel Sone served the contestee with a notice of contest setting forth in substance that the election judges in the various precincts refused to count ballots on which Sone was voted for for the alleged reason that said ballots were not properly prepared and marked according to the laws of this state when in truth and fact said ballots were valid and legal ballots; second, that said

judges had counted for contestee Williams ballots not legally and properly prepared; third, that the election judges had committed errors and made mistakes in counting the ballots whereby the result was changed in favor of contestee Williams.   This notice was served in time to make the cause triable at the December term, 1894, of the Cole county circuit court.

Thereupon contestee Williams served contestant with a counter notice of contest making charges of errors and mistakes similar to those made by contestant and in addition charged that contestant had received the ballots of a number of illegal voters whose names were set out in the notice.   No effort was made to sustain this last charge and it is not before us for review.

Within twenty days after the election, contestant filed a supplemental notice, which was quashed on motion of contestee.   A motion was also lodged against the original notice of contest which was overruled.

At the December term, on the sixth day of December, 1894, the court made an order directing the county clerk to open, count, and compare the ballots in the presence of the parties and their attorneys.   The contestant was represented by F. M. Brown and Dante Barton, members of the Cole county bar, and the contestee by Messrs. Waldecker and Chamberlin, of the Cole county bar, and Major Moore, of the Moniteau county bar.   After due notice to all parties the clerk, in the presence of both parties and the above mentioned attorneys, made the recount and subsequently filed the same in court as directed.

A correct tabulated statement of the official count and recount as contained in the clerk's return, is as follows:

Sone v. Williams.

| | OFFICIAL COUNT. | | RECOUNT. | |
|---|---|---|---|---|
| | Sone. | Williams. | Sone. | Williams. |
| Jefferson township— | | | | |
| First ward. | 277 | 192 | 273 | 198 |
| Second ward | 182 | 221 | 183 | 222 |
| Third ward | 181 | 200 | 182 | 201 |
| Fourth ward | 215 | 219 | 214 | 219 |
| Scott's | 47 | 42 | 47 | 42 |
| Scrugg's | 40 | 66 | 46 | 64 |
| Elston | 136 | 58 | 141 | 53 |
| Centretown | 84 | 73 | 84 | 73 |
| Marion | 33 | 24 | 36 | 24 |
| Russellville. | 158 | 90 | 162 | 88 |
| Lohman's | 43 | 120 | 45 | 117 |
| Union Store. | 87 | 131 | 89 | 131 |
| Hickory Hill | 74 | 32 | 74 | 32 |
| Teal. | 33 | 18 | 36 | 14 |
| St. Thomas | 86 | 18 | 86 | 18 |
| Osage Bluff | 32 | 84 | 36 | 80 |
| Wardsville | 29 | 51 | 30 | 58 |
| Taos | 72 | 105 | 79 | 102 |
| Osage City | 43 | 119 | 45 | 115 |
| | 1852 | 1865 | 1888 | 1853 |

Williams' majority on official count, 13.
Sone's majority on recount, 35.

After the return of the clerk had been filed and before the trial, on January 9, the contestee filed the following motion for another recount:

"And now comes Charles F. Williams, the above named contestee by his attorneys, and moves the court to order that a writ issue to the clerk of the county court of Cole county, Missouri, commanding him, the said clerk, to open, count, compare with the list of voters, and examine the ballots in his office which were cast for the office of sheriff of said county, at the general election held on the sixth of November, 1894, and to take down and preserve all facts which the contestee herein requires which may appear from the ballots affecting or relating to the office of sheriff of said county, and that he certify the result thereof to this court.

"Contestee makes this application and motion upon the following grounds and facts:

"Because the result of the recount of said ballots made by the clerk of the county court of Cole county, as shown by his report, is not a correct and true statement of the ballots as cast by the electors of said county, and as counted and returned by the officers of election in the various precincts of said county for the respective parties herein, for said office.

"And contestee avers that he has good reasons to believe and does believe, and so charges the facts to be, that since the ballots were cast by the electors of Cole county on said sixth day of November, 1894, and after said ballots had been counted by the judges and clerks of election and the poll books made out and signed, and *after the returns were made by the election officers in the several precincts of said county*, and prior to the recount of the ballots by the county clerk on the application of contestant, a large number of such ballots have been changed and altered by some party or parties to this contestee at present unknown, so that the result of the vote for the office of sheriff of said county has apparently been changed; and contestee avers that his name has been, since said election, erased on some of the ballots, and that the name of the contestor has been written in and substituted on some of said ballots in the place of contestee's name which has been erased thereon.

"Contestee avers that if a re-examination be had on his motion, he will be able to establish these allegations by competent evidence, and that he was duly elected sheriff of said county at said election by a larger majority than that shown by the official count.

"And contestee avers that in at least ten precincts of said county the contestee's name has been erased on a number of ballots, and that the contestant's name

has been written in and substituted for the office of sheriff in place of this contestee, and the candidate of the people's party for said office, which have been erased on a number of ballots in such precints where the ballots have been tampered with since the returns were made by the officers, to wit, the judges and clerks of election; that by reason of such erasures and changes made upon the ballots as cast and counted, the contestor has made an apparent gain of at least sixty-five votes in the county, and contestee avers that in no other way than by a re-examination of the ballots for sheriff is he able to prove and establish his allegations, as herein made, that he could not contemplate the state of facts as to the changes in the ballots prior to the recount on the application of contestant.

"That if a re-examination be had on contestee's motion he believes from facts and evidence that have come to his knowledge that he can show to the satisfaction of the court that on the face of the ballots as counted by the judges and clerks of election in the various voting precincts of Cole county he was, on the sixth day of November, 1894, chosen sheriff of Cole county, Missouri, by a majority of the legal ballots cast by the electors of Cole county.

"Wherefore contestee prays for an order that a writ issue for a recount and re-examination as heretofore prayed."

This motion was overruled by Judge Shackleford, and thereupon contestee filed his application for a change of venue because of the alleged prejudice of Judge Shackleford, and thereupon by consent of the parties, Arthur M. Hough, Esq., a member of the Cole county bar was elected special judge to try the cause.

On January 10, contestee renewed his motion for a recount for the following reasons: .

"Because the recount as made by said clerk on the application of contestant is not a correct and true statement of the ballots as cast, and said report is incorrect, and said contestee specifically charges that since the ballots were cast and counted and the returns made by the election officers, in the various voting precincts of Cole county, a large number of the ballots have been altered and changed, by parties unknown, prior to the recount by the county clerk, so that the result of the election for said office has apparently been changed. That on some of said ballots the name of contestee has been erased and the name of the contestant written in and substituted therefor, subsequent to the return of the poll books, and prior to the recount aforesaid."

(Eight precincts are enumerated where such changes were made, a specific number being given in each, the aggregate amounting to thirty-eight erasures of contestee's name and the substitution of contestant's on thirty-six of such ballots, which alone would give contestee a larger majority than the official count shows.)

"Contestee alleges that he had no reason to anticipate these alleged forgeries before the recount, and was not fully satisfied thereof until near the time of the completion of the recount, and too late (as ruled by the clerk) to keep a full and complete memoranda of such fraudulently changed votes; that by a re-examination of the ballots the contestee will be able to fully substantiate these charges by the election judges and clerks, and by the testimony of the voters themselves who cast the ballots so fraudulently changed.

"The facts are now known to contestee which were not known at the time of the recount and which it would be improper for him to state, until the ballots are re-examined, by which he will show that these allegations are true; that the purpose of the motion is

not for vexation or delay and he is willing to proceed at once with such an examination of the ballots.''

This motion was supported by the affidavits of contestee; also by a judge and clerk of election of Taos precinct, that the pouch containing the ballots of that precinct was opened by the county clerk and the poll books taken therefrom before the recount; also by Conrad Waldecker, Esq., one of contestee's attorneys, as to his belief and as to the mutilated condition of the envelopes containing the ballots. Also of S. D. Chamberlin, Esq., also an attorney of contestee, who states he believes he saw evidence at the time of the recount that the ballots had been tampered with, and that he demanded of the clerk a review and recount before the work of recounting was fully completed and that the ballots were in some cases not strung or sealed as required by law; also by several judges and clerks that in their precincts the name of contestee was not scratched on the republican column, though he loses and contestant gains votes therein. Then follows the affidavit of F. W. Roer, county clerk. He states that after the return of the ballots by the election officers to his office, such ballots remained in his office more than two days in such condition and places that they might have been changed and tampered with; that persons might have entered his office at night during such time and tampered with them, but so far as his knowledge goes, such has not been done.

Resisting this motion contestant filed the following affidavits of himself and his counsel:

"STATE OF MISSOURI, ⎱ ss.
"County of Cole.        ⎰

"Samuel H. Sone, of lawful age, being duly sworn, on his oath states that he was present, as contestant, during the examination, comparison, and recount of the ballots before the county clerk in the con-

tested case of S. H. Sone vs. C. F. Williams for the office of sheriff of Cole county, Missouri; that while so present said contestee, by his attorneys, after the recount had been make and footed up and the result announced, requested the clerk to reopen the boxes containing the ballots of Elston precinct, Russellville precinct, and Union Store precinct, in order that he, said contestee, might have the opportunity of examining the handwriting of such ballots as had the name of Williams erased and Sone written in—said contestee, by his attorney, stating that he wanted said opportunity of examination for the same purpose that he had made similar memorandum from the ballots in Taos and Osage City precincts; which request the clerk refused, at the time stating that he did not believe he had the legal right to grant said request, and because contestee and his attorneys had already fully examined all of said ballots, and because contestee's attorney stated that he wanted such information for his own private use, and because he had expressly stated to said county clerk that he did not wish to embody in this return the result of like examinations made by him of the ballots of Taos and Osage City precincts, in Liberty township.

"And affiant further states that during the recount of the ballots of said Taos and Osage City precincts, said contestee, by his attorney, Maj. John W. Moore, made memoranda of all ballots where the name of Williams was erased and the name of Sone written in, and in answer to questions expressly asked him by the county clerk F. W. Roer, and Dante Barton, one of the attorneys for contestant, expressly stated that he did not want said memoranda embodied in the return, but was making it for his own private use, and that said county clerk and said attorney need not make any memoranda of the same, as they had nothing to do with the return.

"And affiant further states that said contestee and his attorneys had ample opportunity to examine all of said ballots, and, in fact, did fully examine the same at the time they were open and out of the boxes for inspection, and that they were not returned to their boxes until both the contestor and contestee and their respective attorneys had expressed themselves as satisfied with the examination they had given them.

"And affiant further states that he examined all of said ballots of every precinct in the said Cole county at said recount, and particularly the ballots at Taos and Osage precincts in Liberty township, and all of said ballots were in proper condition and bore no evidence whatever of fraud or of having been tampered with, and that no question or suspicion of fraud was at any time during said recount raised by said contestee or his attorneys until after the footing up of the total vote and the result announced, giving Sone a majority of thirty-five over said contestee, except that contestee's attorneys, during the count of Osage City precinct (the last one recounted), suggested that the handwriting in the name of Sone written in said ballot was unlike the other manuscript writing as to other names of the said two ballots.                     S. H. SONE.

"Subscribed and sworn to before me this tenth day of January, 1895.         W. H. LUSK, Clerk.

"By J. A. DROSTE, D. C."

"STATE OF MISSOURI, ⎫ ss.
"County of Cole.    ⎭

"F. M. Brown and Dante Barton, of lawful age, being duly sworn, on their oaths state that they were present as the attorneys for the contestor, S. H. Sone, during the examination, comparison, and recount of the ballots before the county clerk in the contested election case of S. H. Sone vs. C. F. Williams for the office of sheriff of Cole county, Missouri; that while so

present said contestee, by his attorneys, after the recount had been made and footed up and the result announced, requested the clerk to open the boxes containing the ballots of Elston precinct, Russellville precinct and Union Store precinct, in order that he, said contestee, might have the opportunity of examining the handwriting of such ballots as had the name of Williams erased and Sone written in, said contestee, by his attorneys, stating that he wanted said opportunity of examination for the same purpose that he had made similar memoranda from the ballots in Taos and Osage City precincts; which request the clerk refused, at the time stating that he did not believe he had the legal right to grant said request, and because contestee and his attorneys had already fully examined all of said ballots, and because contestee's attorney stated that he wanted such information for his own private use, and because he had expressly stated to him that he did not wish him to embody in this return the result of like examinations made by him of the ballots of Taos and Osage City precincts in Liberty township.

"And affiants further state that during the recount of the ballots of said Osage City precinct said contestee, by his attorney, Maj. John W. Moore, made memoranda of all ballots where the name of Williams was erased and the name of Sone written in, and in answer to questions expressly asked him by the county clerk, F. W. Roer, and Dante Barton, one of the attorneys for contestant, expressly stated that he did not want said memoranda embodied in the return, but was making them for his own private use, and that said county clerk and said attorney need not make any memoranda of the same, as they had nothing to do with the return.

"And affiants further state that said contestee and his attorneys had ample opportunity to examine all of

said ballots, and, in fact, did fully examine the same at the time they were opened and out of the boxes for inspection, and that they were not returned to their boxes until both the contestor and contestee and their respective attorneys had expressed themselves as satisfied with the examination they had given them.

"And affiant Brown further states that he examined all of said ballots of every precinct in the said Cole county at said recount, and particularly the ballots at Taos and Osage City precincts in Liberty township, and all of said ballots were in proper condition and bore no evidence whatever of fraud or of having been tampered with; and both affiants further state that no question or suspicion of fraud was raised at the time during said recount, by said contestee or his attorneys, until after the footing up of the total vote and the result announced giving Sone a majority of thirty-five over said contestee, except as to the first and second ballots counted at Osage City precinct in Liberty township, in which contestee contended that the handwriting in the name of Sone written in said ballots was unlike the other manuscript writing in the ballots.

                                        "F. M. BROWN,
                                        "DANTE BARTON.

"Subscribed and sworn to before me this tenth day of January, 1895.        W. H. LUSK, Clerk.
                                        "By J. A. DROSTE, D. C."

A part of the return of the clerk was also read in evidence, as follows:

"The contestor and his attorneys, and the contestee and his attorneys, were permitted to fully examine the ballots, and all the facts either party desired are hereinafter stated. The poll books and ballots of each voting precinct in said county were opened, counted, compared with the list of voters and

examined separately, and facts in regard thereto noted as follows, to wit:     *     *     *

"After the recount was made and footed up and compared with the official count, and the majority ascertained and declared to be thirty-five for contestor S. H. Sone, and the ballots of each precinct, except Osage City precinct, had been re-strung and returned to their boxes or envelopes, contestee, by his attorneys, requested and demanded of me that I reopen the boxes containing the ballots of Elston precinct, Russellville precinct, and Union Store precinct, in order that he, contestee, might have the opportunity of examining the handwriting of such ballots as had the name of Williams erased and Sone written in, which request I declined to grant, because I had no legal right to do so, and because contestee and his attorneys had already fully examined all of said ballots, and because contestee's attorney stated that he wanted such information for his own private use, and because he had expressly stated to me that he did not wish me to embody in this return the result of like examinations made by him of the ballots of Taos and Osage City precints in Liberty township."

No exceptions were saved by contestee to reading in evidence by contestant of foregoing affidavits and part of the clerk's return.

Contestant also offered the following testimony in explanation of the affidavit of F. W. Roer, filed by contestee:

F. W. Roer, being duly sworn, testified as follows (against contestee's exceptions to oral evidence on said motion):

"My name is F. W. Roer; I am county clerk of this county; I had in my care and keeping the ballots returned to the county clerk's office cast at the general election held November 6, 1894; they are now in the

vault in my office; I received them from the messengers that returned the ballots—some judges and some clerks; some of the ballots were in good condition, others were in a dilapidated condition, caused by long horseback rides; they were in paper boxes, heavy pasteboard. (One of the boxes containing the ballots was brought in and shown to the court by the witness).

"*Q.* They were in that shape, were they? *A.* Yes, sir.

"*Q.* Those were tied and sealed up? *A.* After the recount, we resealed them. * * * About a dozen were in a dilapidated condition. *By dilapidated, I mean the sacks were torn.* They were broken where the strong cases were. Some of them were sealed: That is, mucilage pasted there (illustrating). *They (the ballots) did not bear any evidence of ever having been out of the envelopes; only the envelopes were torn.*

"*Q.* You mean by being torn, where the string goes around them, they were broken? *A.* There was no string around them when I got them.

"*Q.* Well, I mean about here (illustrating), where that string is? *A.* Yes, sir; that is one that was torn, and there are others a heap more than that. I remember one precinct torn on the side and pinned together. * * * I kept them in my office; I am now keeping them in the vault in my office. I opened one of those ballots—the Hickory Hill precinct. That was when the ballots were brought in; on the evening of the election I think it was. There was one precinct returned by the messenger or one of the judges, and I asked for the poll books and talley sheets, and he said it was inside with the ballots, and I said, that is not the proper way to have them. I wanted them to cast up the official count. Then I called the attention of all the people in the office to the fact that I had open it in order to get the poll books out, and the judge of

the election said, 'there is nothing wrong in that,' and
I sad, 'No, I guess not.'   There was at least thirty or
forty people in the office, and I resealed it in the pres-
ence of all the people.   These envelopes are in the
same condition, so far as I observed, as when I received
them.   Most of them were brought in on horseback—
carried from eight to thirty miles.   I have handled
documents and papers a good deal.   The ballots in the
envelopes were brought in in sacks that lay across the
horse.   My idea is that, in carrying them that distance
in sacks, they were cracked.   *   *   *   I opened those
ballots and counted them after I had an order from
the circuit court, at the recount.   *   *   *   The ballots
were not changed or tampered with in my office to my
knowledge.   My deputy is Mr. Horace Church.   I did
not open the poll book from Taos precinct; I think it
was Hickory Hill; I know it was only one, and that it
was Hickory Hill.''

Horace Church's evidence is to the same effect.

The circuit court upon this showing overruled the
motion, and the cause came on for trial, and contestee
demanded a jury which the court denied and the cause
was tried by the court.

The contestant offered evidence tending to prove
his eligibility to the office; that the contestee held the
certificate of election; that the ballots had not been
changed or tampered with after reaching the county
clerk; that the county clerk had called to his assistance
two judges of the county court and canvassed the votes
at the general election in 1894, and that upon the face
of the returns contestee was elected, and then read in
evidence the return of the county clerk on the recount,
showing a majority of thirty-five for contestant.   This
result showed the votes counted and returned by the
clerk to which no objections whatever were made by

the parties on the recount and no irregularities noted by the clerk.

There were, however, sixteen ballots to which objections were made and in all of these cases a fac-simile of the ballot thus challenged was made by the clerk and returned with his report to the court. Of these the court counted nine for contestant and four for the contestee, changing the totals to one thousand, eight hundred and ninety-seven for contestant and one thousand, eight hundred and fifty-seven for contestee, and changing contestant's majority to forty instead of thirty-five.

At the close of the contestant's case, contestee offered evidence of what transpired during the count, which does not materially differ from that of contestant's witnesses, the witnesses differing upon some minor points which could not affect the result either way, the principal evidence being, the ballots were kept in the clerk's office for three or four days, but not in the vault; that during the daytime the clerk or his deputy was always in the room, and at night the janitor went in and cleaned up the office. These officers all testify the ballots were not molested by themselves or any other person to their knowledge, and that the pouches were in the same condition when the ballots were recounted that they were when received by the clerk.

The circuit court made a special finding that the county clerk had made return in his report of the recount of every fact that either party required pending the count, and that the ballots had not been changed or tampered with after they were filed with the clerk.

I.    It is now the uniform practice in this court to disregard assignments of error of which no complaint is made in the motions for new trial, and in arrest. It therefore becomes unnecessary to decide whether either party to a contested election can demand a jury.

II. Contestant's notice, though somewhat inartistic in form, contains all the necessary averments, and the circuit court did not err in refusing to quash and dismiss it. The supposed fatal defect urged against it is, that it failed to notify contestee that he, contestee, had received the certificate of election. This was a conceded and uncontroverted fact, and it is impossible to conceive how a failure to make a formal allegation of that fact could have prejudiced contestee. The statute expressly dispenses with all formal pleadings, in such cases, and it would be a palpable violation, both of its spirit and letter, to sustain such hypercritical objections as this.

III. The learned counsel for contestee bases his argument for a reversal of the judgment principally upon what he contended was an abuse of discretion in the trial court in refusing to order a second recount of the ballots, and as the solution of this point is decisive of the case we have given it our most careful consideration.

We do not agree with counsel for contestant that the court had exhausted its power when it made one order for the examination of the ballots. We can conceive of cases in which county clerks might arbitrarily refuse to make return of facts which a party might deem important to his case, and of cases when, through ignorance or inadvertence, he might err as to what ballots should be counted or rejected, and, upon a satisfactory showing, the court should require the recount made over, under proper directions.

But, granting that the court is authorized, upon a proper showing, to order more than one recount, it does not follow that it is a matter of right. A court, having once afforded both parties an opportunity for a full examination and comparison of the ballots with the list

of voters, can reasonably and justly demand of either party seeking a *second* recount an explicit statement of the grounds upon which it is sought.

The motion of contestee for the second recount charges no specific fact, but consists of a vague, general allegation "that he has good reason to believe, and does believe, and so charges the fact to be" (that is to say, solely upon his belief) "that after the ballots had been counted and the returns made, a large number of the ballots had been changed by some party or parties, to contestee unknown, and thereby the result had been changed; that upon the prior recount of the ballots he had no knowledge of any such alteration and did not suspect it until too late to investigate the ballots." And in support of this application he filed affidavits as follows:

Schneiders and Weckemberg, who testify they saw the county clerk open the envelope of Taos precinct, and that he gave to the affiants, who were respectively a judge and clerk of the election at said precinct, one of the poll books and one tally sheet of that precinct upon their asking the clerk if they should not have one, and he answering, yes. The county clerk in his affidavit explains that when this precinct came in he asked the judge who brought the returns for the poll books and tally sheet and he said they were inside with the ballots. He wanted them to cast up the ballots, and he called the attention of everybody, some forty persons, in his office, that he was going to open the package for that purpose, and in their presence he opened the package, took out the poll books and tally sheet and at once resealed them in the same presence.

C. Waldecker makes affidavit that he is informed and believes the ballots have been tampered with, but does not inform the court of the source of his information.

S. D. Chamberlin makes affidavit that he was present at the recount as attorney for contestee and *believes* he saw on ballots *evidence* that said ballots had been tampered with. *What that evidence was he does not disclose.* He nowhere states any fact which he discovered, and requested the clerk to report, which was not reported.

The affidavit of Martin Weith says he was one of the counting judges at Taos precinct, and *that the ballots* were counted over three times and verified. This witness testified on the trial and explained that he did not mean they counted the ballots over three times, but simply verified the footings on the tally sheets three times.

Herman Sommer and Anton Pringer made affidavit that they were judges of election at Osage Bluff and Taos precincts respectively, *and, to the best of their recollection,* the name of contestee was not scratched on any ballots at said precincts and contestant's name inserted in lieu thereof.

F. W. Roer, the clerk, that the ballots were in his office for two days and they might have been tampered with by persons entering said office at night, but to his knowledge said ballots were not changed in their substance or form. Mr. Roer afterward explained that he meant simply his office was not burglar proof, and that he told Mr. Chamberlin to so prepare his affidavit, and this Mr. Chamberlin admits.

The allegations in the motion amount to nothing upon which a traverse could be framed. They simply state the belief of the contestee, and are supported by affidavits as vague and unsatisfactory as the averments they were made to support. When it is considered that these statements and affidavits are made by gentlemen who had an opportunity to scan and examine every ballot cast at that election, it is remarkable that

they are unable to specify any substantive fact by which they expected to substantiate the charge of tampering with and changing these ballots. It will be observed that neither of the affiants makes oath that he knew the handwriting of any voter whose ticket was scratched, or that he knew in whose handwriting the name of contestant was written in said ballots. Another recount must have been made in the presence of the same parties, and all the clerk could have done would have been simply to note the scratched ballots; but a full opportunity had been afforded contestee and his counsel to do this on the recount, and they declined to avail themselves of it. Upon contestee's own showing we think he signally failed to make out a case which required the court to order a recount. It amounts only to his belief, suspicion, and surmise.

So far, we have considered the case upon contestee's averments and affidavits, regardless of the counter showing of contestant, but when we consider the affidavits and evidence offered by contestant it completely refutes every inference of any unfairness or injustice in the count, and rebuts every presumption that anyone had tampered with the ballots. Upon such an issue and evidence we think much must be left to the discretion of the trial court, and we are justified upon the facts in saying he has not abused his discretion.

IV. Counsel also complains that the circuit court refused an instruction asked by contestee to the effect that if the ballots were not placed in the vault in the county clerk's office and *that there was a possible opportunity* to tamper with said ballots by outside parties, and there was reasonable suspicion the ballots might have been tampered with, then the court would reject the recount. Counsel insists it was error to refuse this instruction upon the authority of *Ex parte Arnold*, 128 Mo. 256.

In that case by way of argument, and to emphasize the position therein assumed that the ballots could only be used as evidence in *contested elections*, and that if every grand jury and justice of the peace in the state could demand the ballots as evidence, they would become so mutilated and changed that the preliminary proof that they were in the same condition in which they were cast could not be made when they were required in a contested election, it was said: "Now, it is universally agreed that the admission of the ballots in evidence depends upon the primary proof that they have remained in the * * * custody of the officer charged with their keeping and *that no opportunity has been afforded whereby* they might have been changed or tampered with." Citing McCrary on Elections [2 Ed.], sec. 277; *Ex Parte Brown*, 97 Cal. 83; 31 Pac. Rep. 840.

That the burden is upon the party relying upon the ballots to overturn the canvass by the election officers to show that they have been preserved in the manner prescribed by law, and by the officers charged by law with their keeping, is supported by the great weight of authority. But the expression that it must also appear "*that no opportunity has been afforded whereby they might have been changed or tampered with*" is too strong, and it will be misleading. The writer wrote the opinion in *Ex Parte Arnold* and adopted the rule as formulated by Judge McCrary in his book on Elections (sec. 440, *loc. cit.* p. 293), and quoted with approval in *People ex rel. v. Livingston*, 79 N. Y. 279; but, upon a more careful consideration and review of the decisions upon this point the better rule appears to be that, as between the canvass of the votes by the election officers and the ballots themselves, the ballots are the best and primary evidence, provided they have been kept by the proper custodian and in the manner required by law, and have not been tampered with. *Coglan v.*

*Beard*, 67 Cal. 303; *People ex rel. v. Livingston*, 79 N. Y. 287; *Ex Parte Brown*, 97 Cal. 83.

The supreme court of Kansas in *Hudson v. Solomon*, 19 Kan. 177, in an opinion by Judge BREWER discusses the identical proposition involved in contestee's instruction and condemns the instruction as too extreme. In that case, as in this, it was argued that *it was possible* that someone might have reached and opened the ballot box, and the learned judge answered the suggestion by saying, "it is true there is a *possibility of such a thing, but is there any probability of it?*" And he concludes his opinion with two cardinal rules: "*First*. As between the ballots cast at an election, and a canvass of these ballots by the election officers, the former are the primary, the controlling evidence. *Second*. In order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with."

A close reading of *People ex rel. v. Livingston*, 79 N. Y. 279, and *Hudson v. Solomon, supra,* will, we now think, demonstrate that in both of those cases those courts admitted the ballots in evidence, though in each case there were circumstances far more suspicious and suggestive of opportunities for tampering with the ballots than in this case.

While it is true that the result of the official count made immediately after the ballots were cast and while they were yet in the hands of those who received them from the voters may be overturned by a subsequent count, in every such investigation it should appear to the trier of the fact that the recount is of the identical

ballots cast by the voters and in the same condition in which they were cast.

It becomes, then, primarily a question as to the burden of the proof, and, following the analogies of the law, we consider that when the contestant calls for the ballots in a contested election and they are produced by the lawful custodian, and it appears that he has kept them in the manner required by law, a *prima facie* case is made, unless upon their face and the condition of the boxes or pouches they appear so mutilated, or are in such a condition, as of themselves to rebut the *prima facie* case of correctness, or raise a fair presumption of having been tampered with. The condition of the ballots and the circumstances of their custody present in each case a question of law on the admissibility of the evidence, to be determined by the analogies of the law governing the admission of documentary evidence. The ultimate fact must be found by the trier of the fact by the weight of the evidence. If the court finds the ballots have been tampered with and is not satisfied they are the same ballots cast at the election, or are not for the same candidates, it is its duty to reject them. If it finds that, notwithstanding some irregularities, they are the identical ballots cast at the election and have not been changed so as to alter the result then they are the controlling primary evidence.

In this case the contestant assumed the burden of showing the ballots had been constantly in the custody of the county clerk and had not been touched or handled by unauthorized persons, and the court found as a fact they were not changed or tampered with, and against this proof and this finding the contestee relies upon the naked presumption that they had been tampered with because they were not in the vault, and it was barely possible someone could have entered the courthouse at night and changed the ballots, though

there was not the slightest evidence of such unlawful tampering. Upon this showing we do not think there was any reasonable probability that the ballots were changed, and hence there was no error in refusing the instruction. Upon the whole, we find no error and the judgment is affirmed. BRACE, C. J., BARCLAY, MAC-FARLANE, SHERWOOD, BURGESS, JJ., concur; ROBINSON, J., absent.