# DECEMBER, 1914.

## S. D. BEACH v. THE STATE.

### No. 3194.  Decided December 2, 1914.

**1.—Election Frauds—False Canvass—Indictment.**

Where, upon trial of wilfully making a false canvass of the votes cast at a city election for mayor, the indictment failed to allege the names of the voters, so falsely called, or to allege that their names were unknown, the same was fatally defective.

**2.—Same—Evidence—Ballot Box—Names of Voters.**

Upon trial of unlawfully and wilfully making a false canvass of the votes cast at a city election for mayor, it was reversible error to introduce in evidence and open the ballot box containing the names of the voters at the election mentioned in the indictment. Harper, Judge, dissenting. Prendergast, Presiding Judge, expressing no opinion.

**3.—Same—Case Stated—Ballot Box—Election Contest.**

Where, upon trial of unlawfully and wilfully making a false canvass of the votes cast at a city election for mayor, it was inferable from the record that there had been a contest over the offices prior to the time of the indictment, and it appeared that the ballots had not been destroyed, but had been passed from hand to hand and the ballot box had been locked in the death cell of the county jail, and it was from this receptacle that the ballot box was brought and opened on defendant's trial and introduced in evidence. Held, that this was not an election contest, and the ballots could not be introduced in evidence on the instant trial. Following State v. Taylor, 119 S. W. Rep., 373, and other cases. Harper, Judge, dissenting. Prendergast, Presiding Judge, expressing no opinion.

**4.—Same—Witnesses—Accomplices—Conversation.**

See opinion calling attention to fact that the judges of the election and other officers, who assisted defendant in holding the election, were used as witnesses and testified to conversations had among themselves in regard to the manner of defendant's calling the names of the ballots for the tabulating clerk, by which they placed themselves in the attitude of accomplices, etc.

Appeal from the District Court of Nueces.  Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of unlawfully and wilfully making a false canvass of the votes cast at a city election for mayor; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jno. C. Scott* and *G. R. Scott* and *Boone & Polk,* for appellant.—On question of insufficiency of indictment: Rich v. State, 38 Texas Crim. Rep., 199.

On question of admitting in evidence the ballot box and ballots: State v. Taylor, 119 S. W. Rep., 373, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—The indictment charges that an election was held in the City of Corpus Christi at voting precinct No. 2 for the purpose of electing a mayor and four commissioners of the City of Corpus Christi, and that appellant was a judge of the election, and while acting as such he unlawfully and wilfully made a false canvass of the votes cast at the election in said precinct No. 2, in this: "that the said S. D. Beach did, as one of the counting judges at said election, read and announce two hundred and thirteen (213) votes as being cast in said voting precinct No. two (2) for Clark Pease for the office of mayor of the said City of Corpus Christi, twenty-six (26) votes as being cast for H. R. Sutherland for the office of mayor of the said City of Corpus Christi, seventeen (17) votes as being cast for W. G. Blake for the office of mayor of the said City of Corpus Christi, whereas, in truth and in fact there were cast at said election in said voting precinct No. two (2) one hundred and twenty (120) votes for said Clark Pease for the office of mayor," etc., one hundred and twelve votes for Sutherland, and twenty-two votes for Blake for the office of mayor, which canvass it is alleged was falsely made by appellant.

The indictment is attacked for various reasons. The writer is of the opinion that it is not sufficient to charge the offense. If by "canvassing" it is meant that appellant, as one of the judges, falsely called the ballots for tabulation, then the indictment should have alleged the names of the voters so falsely called, and if that could not be done, then that the names were unknown. Whether the ballot box could be opened or not for the ascertainment of the truth or falsity of the allegation against appellant, all voters whose names were not erroneously called were entitled to protection under the Constitution and laws of this State from having the secrecy of their votes uncovered. The Constitution protects by secrecy the ballot of all voters, and the Legislature, as well, protects the voters from having their ballots announced as found in the ballot boxes except in cases of contested elections. This was not a contested election but a criminal prosecution. There is another reason why the names should be alleged, that is, that the defendant is entitled to be notified as to the basis of the allegations that he had falsely called names, in order that he might meet this on his trial. The indictment states nothing except conclusions, and notifies the defendant of nothing except that he had called over a certain number of names in favor of the different candidates, whereas, in truth and in fact he had miscalled them so as to make the actual and truthful result different from that returned. It is hardly thought necessary to cite authorities on these questions. There are other questions suggested why the indictment is not sufficient, but in view of what is said we do not care to go further into those matters.

The State was permitted to introduce in evidence and open the ballot box containing the names of the voters at the election mentioned in the indictment. Various and sundry objections were urged to the

introduction of this testimony. At this late date, in view of all the authorities, the Constitution and the statute, we are of opinion the court was clearly wrong, and the objections should have been sustained. Article 6, section 4, of the Constitution provides that voting shall be "by ballot." That, of course, means a secret ballot. The same section and article of the Constitution provides that the Legislature may or shall enact suitable legislation to guard the purity of the ballot box. This is not only within the power of the Legislature, but it seems to be mandatory that it should be done. In accordance with these provisions of the Constitution the Legislature has enacted certain legislation with reference to the matter, among other things, that it is required that these boxes containing the votes shall be returned to the county clerk, who shall keep them twelve months, at the end of which time he "shall burn" the ballots. The Penal Code provides a heavy punishment against the clerk if he fails to destroy and burn these ballots at the end of the twelve months. There are other provisions of a kindred nature which, we think, unnecessary here to quote. The statute further provides the ballot box *shall remain in the keeping* of the clerk for a term of twelve months, to be opened only within that time, and then only in case of contested elections. This was not a contest, and the twelve months had long since elapsed at the time of the trial since the election was held. It is inferable from the record that there had been a contest over the offices prior to the time of this indictment. Of course that litigation could only have occurred within the twelve months. There is evidence set out in a bill of exceptions disclosing that the ballots had not been destroyed, but on the contrary had been passed from hand to hand until finally the box containing the ballots was locked in the death cell in the jail and the key turned over to the district clerk, and it was from this receptacle the ballot box was brought and opened on appellant's trial. It seems to be the well settled rule under the decisions, that when the twelve months have elapsed, the ballots can not be used; they are legally destroyed,—whether in fact they were actually destroyed or not. The rule is thus stated in 15 Cyc., 428: "After the date when the statute requires that ballots shall be destroyed they have no legal existence and are not admissible in evidence, no steps having been taken to have a lawful recount." This question was passed upon in State v. Bate, 70 Wis., 409. That applies in cases where the ballots were permitted legally to be used as in election contests. But whether the ballot box had been opened or not, and whether the criminal prosecution occurred within twelve months would make no difference so far as this case is concerned, because the statute has limited the opening of the ballot box to contested elections, and the authorities hold that these ballot boxes can not be opened or the ballots used as evidence in criminal cases. See State v. Taylor, 119 S. W. Rep., 373; Ex parte Arnold, 30 S. W. Rep., 768. In the Taylor case, supra, there are quite a number of decisions collated. This question seems to have been decided in State v. Francis, 88 Mo., 557. The Legislature by express authority of the Constitution is required to pass such

regulations as may be deemed proper to guard the purity of the ballot box, and such incidental matters as that body may think necessary, right and proper. They have exercised their authority to the extent of authorizing ballot boxes to be opened within twelve months in contested election cases, but have not seen proper to go further. Their reasons for not making further provisions are unnecessary to discuss. That they have not done so settles the question, and in enacting legislation with reference to opening ballot boxes they imposed two conditions which are binding upon this court: first, ballot boxes can not be opened except in election contest cases, and, second, this can only be done within twelve months; and to this may be added the third, that these ballots are required under criminal penalty to be burned at the end of twelve months, and if the clerk does not do so he is subject to the punishment imposed in the Penal Code.

In Ex parte Brown, 97 Cal., 83, these questions were discussed at length by the Supreme Court of that State. The court was met with the question and suggestion that the public was as much interested in preserving the integrity of the ballots and the ballot boxes and in detecting and punishing fraud as they were in contested elections. The proposition seems to carry the idea that while the Legislature had limited the matter as indicated in the statute, yet that on account of the general public welfare and interest, the courts should go further and enlarge the rule by permitting the ballot boxes to be gone into in criminal prosecutions. Quoting from that opinion we find this language: "We are asked by counsel how the declared intention of the Legislature to punish frauds by election officers can be reconciled with an intention to prevent the use of the best means of proving such frauds. It might as well be asked how the plain injunction of the statute that the ballots must be destroyed at the end of one year can be reconciled with the law which authorizes a prosecution to be commenced at any time within three years. Both these questions may be answered in the same way. The different provisions are in neither case absolutely inconsistent, and if it is true that the preservation of the ballots as the law directs is an obstacle to the enforcement of the newly provided penalties for frauds of election officers, this result flows from the fact that the Legislature, in this instance, as in so many others, has failed in revising the old law to co-ordinate its different parts so as to bring them into perfect harmony with its new policy. This failure of provision, however, if indeed there was such failure, can not be remedied by the courts, but must be left to the Legislature itself for amendment. If it is thought necessary to make the ballots available as evidence in criminal proceedings, the Legislature can do so under such limitations and restrictions as may be deemed essential to their integrity. The courts can not open them for inspection without destroying all safeguards, except such as each particular judge who may order them into court shall see proper to apply, nor without impairing in all cases, and possibly destroying in many, their value as evidence for the only purpose for which the law has directed their preservation."

From the Francis case, supra, this quotation is made: "But it is asked, has the Constitution deprived the State of Missouri of the right to inspect the ballots when she seeks to expel an intruder from office? Shall she not be permitted to have the ballots opened when necessary to convict illegal voters? The Constitution names one class of cases in which they may be inspected, and unless the supposed cases belong to that class the State has no more right than an individual suitor to an inspection of the ballots. She is as much bound by the Constitution as any citizen, and, if she has chosen by her organic law to tie her hands in this matter, it is not in our power to release her from restrictions she has imposed upon herself." These cases deal not only with the proposition that the Legislature limits the use of the ballot only to election contests and within twelve months but is augmented further by the proposition of secrecy enjoined by the Constitution through "the ballot," and it is only when the Legislature expressly authorizes the uncovering of this secrecy for such purpose as that body may deem proper that that secrecy can be removed. The voter has a right to have his vote protected against inspection, unless in guarding the purity of the ballot box the Legislature may provide means or methods for necessary occasions to uncover such secrecy. In the Arnold case, supra, the Missouri court, as did the California court in Ex parte Brown, among other reasons, places it upon the same principle which prevents disclosures of confidential and privileged communications. The court said: "There are doubtless many instances in which the evidence of a husband would convict a wife, or the wife would settle the guilt of her husband, and yet the law in its wisdom seals his or her mouth. Likewise the testimony of an attorney, priest, or physician may establish beyond all doubt the guilt of the client, penitent, or patient in a given case, and yet it is excluded. These exceptions are based upon the peace of society, but in the estimation of the people of Missouri good government itself is dependent upon absolute inviolability of the ballot except in a 'contested election,' and then only under such safeguards as would insure both the secrecy of the ballot and absolute verification of the election as held by the people. These two considerations governed the convention in framing and the people in adopting the Constitution."

In one of the cases the grand jury sought to use the testimony by opening up the ballots. This the court held could not be done, and that such testimony could not be used in criminal cases. In fact, following the legislative authority the court holds that the ballot box can only be opened and used in contested election cases and can not be used in criminal cases. The Legislature has not so provided. We are not without ample authority holding the same views in Texas, for in the case of Clary v. Hurst, 104 Texas, 423, the Supreme Court of this State announces the same rule in an able and exhaustive opinion delivered by Justice Ramsey. That opinion is in line with the authorities, upholds the Constitution, and adheres to the statute. It is there held that the statute limits and restricts the opening of the ballot box and

use of the ballots to contested election cases, and that this must occur within twelve months. The objection, therefore, urged by appellant to the introduction of the ballot box and the ballots before the jury, should have been sustained.

There are other interesting questions in the case, but they are somewhat corollary to the main proposition, and we deem it unnecessary to discuss them. But we will call attention to the fact that the judges and other officers who assisted appellant in holding the election were used as witnesses and testified to conversations they had among themselves in regard to the manner of appellant calling the names of the ballots for the benefit of the tabulating clerks of the election; but they said nothing to him about it, nor did the assistant counting judges say anything so far as we understand this record, but they testified that appellant may have heard what they had to say about it. If the other counting judges, whose business it was to see a proper count made, permitted appellant to do so, believing he was doing wrong, and then sign as all the officers did the returns showing that appellant had miscounted, they would evidently be in the attitude of accomplices, for all those who signed the tally sheets, returns, etc., showing incorrect and fraudulent count of the vote, signed the same as being correct. The law charged them with the duty of seeing that the count was correct, vote correctly recorded, and correct returns made. On the trial they testified in effect what was fraudulent counting. We call attention to this in case of another trial.

For the errors discussed the judgment is reversed and the cause is dismissed.

*Reversed and dismissed.*

HARPER, JUDGE.—I concur in the reversal of the case on account of defect in the indictment; but the ballot box having been opened in a contest of the election, if the ballots inspected in this contest of the election show the court that a crime had been committed, the trial court could order the ballots preserved as evidence, and under such circumstances the ballot box having been opened under the provisions of the statute, and under such circumstances the ballots were properly admitted, and I will write my views in full later on.

PRENDERGAST, PRESIDING JUDGE.—I concur in the opinion as to the insufficiency of the indictment, but express no opinion on any other question.

HARPER, JUDGE.—In this case I wish only to state my non-concurrence in that part of the opinion which holds that the ballots were improperly admitted in evidence. By the record it is disclosed that there was a contest filed over the office of mayor and the ballot boxes opened in the trial of that case. This the statute specifically authorizes to be done. The statute (art. 3028) only provides for the burning of the ballots after twelve months, in case *no contest* is instituted. In

this case we know a contest was instituted, therefore the clerk would not be authorized to destroy the ballots during the pendency of that contest. And if in the trial of the contested election case the ballot boxes were opened, and by the ballots it was made manifest to the trial judge that a crime had been committed by someone, we think it his duty, as he apparently did in this instance, to have the evidence preserved to be used in a prosecution of whoever may have had a guilty participancy in the wrongful calling of the ballots and certifying to an improper return. The evidence (the ballots) having come into his possession in a legal way, the ballot box having been opened in the trial of the contested election case, the veil of the *secrecy of the ballot* having already been legally torn aside, it was not improper to use the ballots in the trial of this case. We agree that if no contest had been instituted and the ballot box opened on the trial of that cause, the judge would have no authority to have had them opened on this trial. But no such question is before us, but a case where the ballot box had been opened under the specific authority and direction of the law, and it having been done legally, it was legitimate and proper to make use of them in the trial of this case.