## W. D. CARROLL V. THE STATE.

No. 15912.   Delivered June 14, 1933.
Reported in 61 S. W. (2d) 1005.

The opinion states the case.

*Oxford & McMillan*, of Stephenville, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

MORROW, Presiding Judge.—The offense is the violation of article 227, P. C., 1925, which reads as follows: "Any judge or clerk of an election, chairman or member of a party executive committee, or officer of a primary, special or general election, who wilfully makes any false canvass of the votes cast at such election, or a false statement of the result of a canvass of the ballots cast shall be confined in the penitentiary not less than two nor more than five years."

The penalty assessed against the appellant is confinement in the penitentiary for a period of two years.

The criminal act averred in the indictment consists of the claim that Carroll, while a judge in the election, charged with the duty of announcing the names of the candidates from the official ballot in whose favor the votes were cast, had wrongfully, knowingly, and wilfully given a canvass of the votes cast in favor of H. L. Stewart as having been cast in favor of B. J. Pittman.

The validity of the conviction is denied by the appellant on the claim that the evidence against him was illegally obtained and was introduced over his objection.

As understood, there was held on August 27, 1932, a primary election in Precinct No. 1 of Comanche County, Texas, to select Democratic nominees for the general election on November 8th. Appellant was one of the judges charged with the duty of counting the votes. A total of 571 votes were polled. On the face of the official returns, candidate Stewart had 249 votes and Pittman, his opponent, had 316 votes. There was no contest of the election either before the executive committee, as authorized by article 3148, R. S.,.1925, nor before the court.

Appellant was tried on November 17, 1932. The ballots and tally sheets were kept until September 3, 1932, at which time they were canvassed by the executive committee as required by article 3125, R. S., 1925. Repetition of the canvass occurred several times. During the meeting of the grand jury in July, 1932, the ballots were sent from the jail (where they had been kept) to the grand jury. They were kept by the grand jury for several days, during which time the box containing the ballots was opened and the ballots inspected and the votes counted by members of the grand jury. A witness was called and the ballots seriatim were put in her hand and identified by her. Together with her testimony, the 571 ballots were introduced in evidence before the jury. During the trial the witness mentioned stated the name of each voter and the name of the person for whom the vote was cast so far as pertained to the two candidates in question. The evidence discloses that the ballot-

box was handled by a number of unauthorized persons and kept from time to time in several different places. In fact, the law relating to the custody of the ballot boxes was not observed, upon which appellant bases the objection that the procedure was a deviation from the custody commanded by statute, title 50, chap. 13, art. 3122, R. S., 1925. See also articles 3027-3028, R. S., 1925.

By proper bills of exception appellant presents for review the action of the court in sustaining the indictment and the reception in evidence of the result of the exposure and examination of the ballots by the witnesses and by the jury.

In section 4, of article 6, Constitution of Texas, is found the following: "In all elections by the people the vote shall be by ballot and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box and the Legislature may provide by law for the registration of all voters in all cities containing a population of ten thousand inhabitants or more."

Pursuant to the provision mentioned, the Legislature, in title 50, Revised Civil Statutes, 1925, and in title 6, P. C., 1925, enacted statutes composed of 250 separate sections reflecting an apparent effort to comply with the letter and spirit of the constitutional provision mentioned. In title 6, supra, are found 92 articles denouncing as crimes and misdemeanors specific acts violative of the election laws.

From the provisions of the Constitution and the statutes mentioned, the appellant draws and asserts the proposition that the procedure pursued in his conviction was illegal for the reason that the opening of the ballots and exposing the names of the voters and the candidates for whom they voted is violative of the policy of the state evinced by its Constitution and laws guaranteeing a secret ballot. He specifically contends that the laws and the Constitution of the state inhibit the exposing and making public the contents of the ballots; that the present procedure was unlawful as such exposure of the ballots cannot be made except by express legislative enactment, and in that connection, he contends that in chapter 8, title 50, R. S., the Legislature has manifested its will that the ballot shall not be exposed except as provided in such chapter, particularly in article 3017, which reads as follows: "No officer of election shall unfold or examine the face of a ballot when received from an elector, nor the indorsement on the ballot, except the signature of the judge, or the words stamped thereon, nor compare it with the clerk's list of voters when the ballots are counted, nor

shall he permit the same to be done; nor shall he examine or permit to be examined the ballots after they are deposited in a ballot box, except as herein provided for in canvassing the voters, or in cases especially provided by law."

In chapter 9 of title 50, R. S., the procedure in an election contest is prescribed. On the exact subject, the precedents in this state are the following:

In June, 1911, there was before the Supreme Court of this State, the case of Clary et al. v. Hurst, reported in 104 Texas Rep., 423, relating to a certified question touching the interpretation by the Court of Civil Appeals of articles 3389 and 3390 of the Revised Civil Statutes in vogue at that time. The statutes mentioned are found in the Revised Statutes of 1895, and in the Revised Civil Statutes of 1911 they appear as articles 5720 and 5721. The certified question was whether it was legal for the authoritieis, after the officers holding the election had made their return as prescribed by article 3389, to actually open the polls and count the votes for the purpose of ascertaining the result of a local option election; that is, to ascertain by actual examination of the ballots whether the election was for or against prohibition. The opinion of the court is unanimous and was written by Justice Ramsey, sustaining an injunction preventing the procedure. The conclusion of the court is expressed at page 571 in the following language:

"Again, it is manifest that the box containing these ballots cannot and was not intended to be opened, except in the event of a *contest,* and then only in response to and by authority of due and lawful process. And by 'contest' here is meant, we think, a suit in which the validity of the election, or the correct ascertainment of the result thereof, is the subject-matter of litigation in a court having jurisdiction to hear and determine such issues. This view harmonizes all the provisions of our election laws, preserves the secrecy of the ballot, and provides for a preservation, under seal, of the integrity of the ballot, in the event of a contest, and cannot by any possibility work either harm or injustice to any one, and is consistent, as we believe, not only with the true intent and purpose of the Legslature, but in harmony with our entire election machinery.

"For many other reasons, and led by many other analogies and considerations which time does not suffice to write out, as well as these given above, we think the answer above given is correct, and we all so adjudge."

In the case of Beach v. State, 75 Texas Crim. Rep., 434, 171 S. W., 715, a prosecution under the same article as is the pres-

ent conviction, we find in the opinion of this court, written by Judge Davidson, the following conclusion:

"The state was permitted to introduce in evidence and open the ballot box containing the names of the voters at the election mentioned in the indictment. Various and sundry objections were urged to the introduction of this testimony. At this late date, in view of the authorities, the Constitution and the statute, we are of the opinion the court was clearly wrong; and the objections should have been sustained.

  *  *  *

"But whether the ballot box had been opened or not, and whether the criminal prosecution occurred within 12 months, would make no difference, so far as this case is concerned, because the statute has limited the opening of the ballot box to contested elections, and the authorities hold that these ballot boxes cannot be opened or the ballots used as evidence in criminal cases."

In support of his conclusion, Judge Davidson refers to the following cases: State v. Taylor, 119 S. W., 373 (a Missouri case); Ex parte Arnold, 30 S. W., 768; State v. Francis, 88 Missouri, 557. In the case of Ex parte Arnold (33 L. R. A., 386), the conclusion which coincides with that of the appellant here, is bottomed upon the view entertained by the Supreme Court of Missouri at the time the opinion was written that the constitutional provision declaring that an election by ballot carries with it the obligation that the ballot be kept secret unless its exhibition is made legal by some express provision of the law. The decisions throughout this country seem unanimous in holding that the requirement that the vote be by ballot, that a "secret ballot" is meant, whether the requirement be in the constitution or in a statute.

That the indictment in the Beach case, supra, was insufficient was the unanimous opinion of the court. Touching the authority to open the ballot, however, Presiding Judge Prendergast expressed no opinion. However, Judge Harper expressed the opinion that the ballots having been previously opened in a contested election case, which was expressly permitted by article 3017, supra, the making use of the information obtained in a subsequent prosecution for the offense was not unlawful.

In article 3028, Rev. Stat., 1925, minute and express legislative direction is accorded with reference to the preservation and secrecy of the ballots. In the article, legislative sanction of the use of the ballots in a contest election case is accompanied with language which unmistakably shows that except in con-

tested election cases the ballots shall not be opened and exhibited.

In article 3128, R. S., relative to primary elections, it is required that *unless there is a contest* of the election for nomination in which fraud or illegality is charged, the ballots shall be destroyed without examination by the county clerk and the county judge at the expiration of sixty days. On the subject of the exhibition of ballots in a contested election and the limitations thereof, see, also, articles 3028 and 3149, R. S.

The mandate of the Constitution of this state that the vote be by ballot must be construed as meaning a "secret ballot" seems in accord with the generally accepted meaning. In Cooley's Constitutional Limitations (8th Ed.), vol. 2, p. 1373, the following is found:

"The mode of voting in this country, at all general elections, is almost universally by 'ballot.' A 'ballot may be defined to be a piece of paper or other suitable material, with the name written or printed upon it of the person to be voted for; and where the suffrages are given in this form, each of the electors in person deposits such a vote in the box, or other receptacle provided for the purpose, and kept by the proper officers.' The distinguishing feature of this mode of voting is, that every voter is thus enabled to secure and preserve the most complete and inviolable secrecy in regard to the persons for whom he votes, and thus escape the influences which, under the system of oral suffrages, may be brought to bear upon him with a view to overbear and intimidate, and thus prevent the real expression of public sentiment.

"In order to secure as perfectly as possible the benefits anticipated from this system, statutes have been passed, in some of the States, which prohibit ballots being received or counted unless the same are written or printed upon white paper, without any marks or figures thereon intended to distinguish one ballot from another. These statutes are simply declaratory of a constitutional principle that inheres in the system of voting by ballot, and which ought to be inviolable whether declared or not. * * * The system of ballot-voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases and with what party he pleases, and that no one is to have the right, or be in position, to question his independent action, either then or at any subsequent time. The courts have held that a voter, even in case of a contested election cannot be compelled to disclose for whom he voted; and for the same reason we think others who may incidentally, or by trick or artifice, have acquired knowledge on the subject

should not be allowed to testify to such knowledge, or to give any information in the courts upon the subject. Public policy requires that the veil of secrecy should be impenetrable, unless the voter himself voluntarily determines to lift it; his ballot is absolutely privileged; and to allow evidence of its contents when he has not waived the privilege is to encourage trickery and fraud, and would in effect establish this remarkable anomaly, that, while the law from motives of public policy establishes the secret ballot with a view to conceal the elector's action, it at the same time encourages a system of espionage, by means of which the veil of secrecy may be penetrated and the voter's action disclosed to the public."

The conclusion stated, namely, that the vote by ballot means a "secret vote," and the zeal and care with which the courts have guarded them is emphasized by many courts and text-writers. See Wigmore on Evidence, vol. 4, sec. 2214; Cooley's Const. Limitations (8th Ed.), vol. 2, p. 1378.

The decision of the Supreme Court of California upon the same subject as the present, and construing a law practically like the law of this state, held that unless there was a contest of the election, the ballots were not available to prove fraud in the electon, nor could the ballots be exhibited where it appeared, as it does in the present appeal, that the regulation for the preservation and custody of the ballot has been disregarded. See Ex parte Brown, 31 Pac., 840. In the same case, touching the criticism that the enforcement of the law as declared might be an impediment to the conviction for fraud, the court expressed the obvious view that the preservation of the secrecy of the ballot and its purity was primarily a subject for the Legislature.

The use against the appellant of the evidence going to show how the individuals at the election voted is regarded as contrary to the law of the land, and we understand it has been so declared in the case of Beach v. State, supra, and also in the case of Clary et al. v. Hurst, supra. Its reception, being in conflict with the law as interpreted in the various decisions of other states and by virtue of article 727a, C. C. P., 1925, declaring that no evidence obtained in violation of the Constitution or laws of the State of Texas shall be admitted in evidence against the accused on the trial of any criminal case, we are constrained to conclude that the conviction of the appellant cannot be sustained.

From the case of Ex parte Brown, 31 Pac., 840, the following quotation is taken: "We are asked by counsel how the declared intention of the legislature to punish frauds by elec-

tion officers can be reconciled with an intention to prevent the use of the best means of proving such frauds. * * * This failure of provision, however, if, indeed, there was such failure, cannot be remedied by the courts, but must be left to the legislature itself for amendment. If it is thought necessary to make the ballots available as evidence in criminal proceedings, the legislature can do so, under such limitations and restrictions as may be deemed essential to their integrity. The courts cannot open them for inspection without destroying all safeguards, except as each particular judge who may order them into court shall see proper to apply, nor without impairing in all cases, and possibly destroying in many, their value as evidence for the only purpose for which the law has directed their preservation."

The views of this court are in accord with the remarks quoted above.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*