**BENAVIDES v. ORTH.**

No. 10561.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 5, 1938.

Rehearing Granted Oct. 8, 1938.
On Rehearing Oct. 13, 1938.

Kennedy Smith, of Raymondville, and F. G. Garza, of Falfurrias, for appellant.

E. G. Lloyd, Jr., of Alice, and Wilson & Wilson and Weatherly & Weatherly, all of Falfurrias, for appellee.

MURRAY, Justice.

We are of the opinion that this Court was in error in affirming the judgment of the trial court in this contest, therefore, our original opinion will be withdrawn and the following opinion substituted therefor.

I. J. Benavides and M. F. Orth were the only candidates for the combined office of county and district clerk of Brooks County, Texas, at the primary election held in said County on July 23, 1938. The official returns of said election showed Benavides had received 696 votes and Orth 679 votes. On July 30, 1938, the Executive Committee of the Democratic party of Brooks County met and canvassed the returns and declared that Benavides had received 696 votes and Orth 679 votes. On July 30th Orth filed with the committee his notice of contest of the election. On August 3d he filed his amended notice. Benavides answered, and a hearing was had before the committee, and on August 9, 1938, the Committee rendered a judgment in favor of Orth, declaring him to be the Democratic nominee for the office of county and district clerk of Brooks County. Benavides gave notice of appeal and the cause was removed to the 79th District Court of Brooks County.

On August 17, 1938, nineteen days after the canvass of the returns and the declaration of the results by the Executive Committee, Orth filed an original action in the 79th District Court seeking to set aside the declaration of the result of said election and seeking to contest said election upon additional grounds than those set forth in his contest filed before the Executive Committee.

On September 8, 1938, a special term of the district court was called for the purpose of hearing this contest. The appeal from the judgment of the Executive Committee was docketed as cause No. 601, and the original action filed by Orth was docketed as cause No. 602. These two causes were consolidated by order of the trial court, over the objection of Benavides, a plea in abatement having been filed to cause No. 602.

Upon an allegation that the ballots had been fraudulently or improperly counted, the trial judge ordered a recount of the ballots cast, and by the recount it was shown that M. F. Orth received 560 votes and that Benavides received 471 votes. According to the official returns Benavides had received 490 votes and Orth 529 votes. As a result of this recount M. F. Orth was shown to have been elected by a majority of thirty-five votes.

The evidence shows that after the committee had recounted the votes on August 9, 1938, it again sent for the ballots and recounted all of the ballots in all of the boxes for all of the offices. The ballots had been in the custody of M. F. Orth, who is the contestant in this case, but the evidence further shows that R. J. Caldwell, who was the executive committeeman from Precinct No. 1, and who also served as presiding judge of voting box No. 1, held the keys to the box containing the ballots from said Precinct No. 1, and that said keys were never in the possession of M. F. Orth.

The hearing in the district court began on September 8, 1938, and continued through September 10th, at which time a recess was taken by the court to enable the judge thereof to attend to other matters. The trial was again resumed on September 20th, and abruptly brought to a conclusion on September 23d. The court. after hearing some evidence with reference to the custody and care of the ballots since the election, admitted them in evidence over the objection of Benavides for the purpose of a recount, at which time the following agreement was entered into by and between the parties:

"Stipulation of Counsel

"Without waiving any objections that Contestee has heretofore made to the opening of the ballot boxes in voting precinct No. 1 in Brooks County, Texas, and without waiving any right of the Contestee to introduce evidence and offer proof showing or tending to show that said ballots have been tampered with or altered since the date of said election, it is agreed by and between the parties hereto, with the consent of the Court, that a recount of the ballots contained in the ballot boxes in Precinct No. 1, Brooks County, Texas, at a Democratic Primary Election held on July

23rd, 1938, offered in evidence, for the nomination of County and District Clerk of Brooks County, Texas, shows that at said election the Contestant, M. F. Orth, received 560 votes, and the Contestee, I. J. Benavides, received 471 votes."

Benavides attempted to call to the witness stand every voter who had voted at Precinct No. 1, for the purpose of showing whether or not his ballot had been tampered with since it had been cast on July 23d, 1938. The trial court, after hearing about sixty-four of these witnesses, refused to permit counsel for Benavides to continue with this line of testimony, and sustained special exceptions (which he had previously overruled) to that part of his answer which attempted to plead that the ballots had been tampered with, and shortly thereafter rendered judgment sustaining the contest and declaring M. F. Orth the Democratic nominee for the office of district and county clerk of Brooks County. I. J. Benavides has prosecuted this appeal from that judgment.

The question of mootness has been raised, but if we are able to dispose of this case with great dispatch we may be able to do so before, under the law, it will become moot.

■ Appellant, Benavides, first contends that appellee Orth's petition filed in cause No. 602 was filed too late. It appears that the Executive Committee met and canvassed the returns and declared Benavides nominated on July 30, 1938, and that the petition in cause No. 602 was not filed until August 17, 1938, more than ten days after such declaration. We hold that this petition was not filed within the time prescribed by law.

■ Appellant next contends that the trial court committed error in consolidating causes No. 601 and No. 602, and that this consolidation amounted to permitting appellee to amend his original contest. We hold that it was error to consolidate these two causes.

■ An examination of the complaint filed with the Democratic Executive Committee of Brooks County by appellee, M. F. Orth, discloses that it does not meet the requirements of Art. 3148, R.C.S.1925, in that it does not state specifically the grounds of the contest, and does not contain special charges of fraud or illegality in the conduct of the election. The complaint was therefore insufficient to invoke

the jurisdiction of the Executive Committee to hear the contest, and it necessarily follows that if the Executive Committee was without jurisdiction, the district court and this Court are likewise without jurisdiction.

Article 3148 provides as follows: "The complaining candidate, if he desires to file a contest with the executive committee, shall, within five days after the result has been declared by the committee or convention, cause a notice to be served on the chairman or some member of the executive committee, in which he shall state *specifically* the ground of his contest; * * *  *If special charges of fraud or illegality in the conduct of the election * * * are made, and not otherwise,* the chairman * * shall within twenty days after the primary election, or the convention, convene the committee, who shall then examine the charges, hear evidence, * * * etc." (Italics ours.)

The complaint or notice, both original and amended, filed with the Democratic Executive Committee of Brooks County, alleged that Orth and Benavides were rival candidates for the office of district and county clerk of Brooks County, at the Democratic Primary Election held on July 23, 1938, and that according to the canvass and result of the election, as had by the Executive Committee on July 30, 1938, Orth was shown to have received 679 votes, while Benavides was shown to have received 694 votes; and that the effect of said declaration of the result of said election is to declare the contestee, Benavides, entitled to the nomination for said office, and to have his name placed on the ballot as the Democratic nominee for said office at the general election to be held November 8, 1938. It then proceeds to set forth his grounds for contest in the most general and widespread terms imaginable. We here quote from a part of the amended notice:

"But this contestant, M. F. Orth, would show that the declaration of the result of said election is incorrect and illegal and that in the event that a certificate of nomination or a certified statement is issued, the same is and would be illegal and fraudulent in that the same is the result of the counting of votes and ballots that were wrongfully and illegally counted and the counting of votes and ballots that were wrongfully and illegally cast, and were cast by persons who were not legally qualified

voters, and by persons who had no right to vote in or at such election and whose ballots were void and by the officers of the election or some of said officers wrongfully and illegally miscounting of votes and ballots, and by officers of the election, in the precincts of Brooks County throwing out and not counting legal ballots cast and voted for Contestant, and this Contestant further says that if and when the illegal, unlawful and fraudulent votes so cast at said election are eliminated therefrom, and the ballots which were cast are correctly, legally and rightfully counted, it will be found that this contestant has and holds a clear majority of all of the legal and lawful votes cast at said election for the Democratic candidates for said office and that this Contestant is therefore entitled to the certificate of nomination at the Democratic Nominee for the office of County and District Clerk of Brooks County, Texas, and is entitled to have said certificate issued and filed with the County Clerk, and is entitled to have any certificate which may have been issued or which hereafter may be issued corrected to show that this Contestant, M. F. Orth, is the Democratic Nominee for said office and entitled to have his name placed upon the ballot at the general election to be held in November, 1938, as the Democratic Candidate for said office of County and District Clerk of Brooks County, Texas."

Following this general allegation, it is alleged that two voters, giving their names, were permitted to vote twice; it is not charged for whom they voted or that they voted for any one for district and county clerk. The complaint then sets out the names of eleven persons alleged to have voted in the election, who were not at the time of the election residents of the State for one year, of Brooks County for six months, and not at the time residents of the precinct in which they voted, or did not have a poll tax for the year 1937. It is not stated for whom these persons voted, nor that they voted for either candidate for district county clerk, nor at what boxes in the county they voted.

The complaint next alleges that five persons were permitted to vote at various voting boxes in the county, who were not at the time of the election above the age of twenty-one years. It is not charged that any of these persons voted for Benavides.

It next sets out the names of eight persons alleged to have voted at the election, who were not citizens of the United States. There is no allegation that these persons voted for Benavides, and it is not stated at what box they were supposed to have voted.

There are some other very general allegations that many persons were illegally allowed to vote.

The complaint ends with the following paragraph: "This Contestant would further show that had the ballots of the above named persons, and the ballots cast by them and as their ballots not been counted, and that had the ballots which were legally cast at said election been counted correctly, as they were voted by the Election officers, that this Contestant would have and has a large majority of the legal and lawful votes cast at said election for the Democratic nomination for the office of County and District Clerk of Brooks County, Texas, and this Contestant now requests and demands that the ballots of the above named persons, named as voters and the ballots cast as the ballots of said above named voters be deducted and not counted and requests and demands that the ballots boxes be opened and re-counted, so that the fraud and illegallity in the miscounting of votes, which were cast for this Contestant and illegality and unlawfully counting of said votes for Contestee be corrected, and the votes cast for this Contestant be counted for him, and that the result of said election heretofore declared on July 30th, 1938, be corrected and that the Contestant be declared to have received a majority of the legal and lawful votes at said election, for said office and that the proper certificate be issued for the filing with the County Clerk of Brooks County, Texas, entitling this Contestant to have his name printed on the ballot at the general election to be held in November, 1938, as the Democratic Nominee for the office of County and District Clerk of Brooks County, Texas."

To our minds nothing could be more widespread and general than the above complaint or notice. It is immaterial that persons were permitted to vote at the election who were not qualified to vote, unless such persons cast their votes for Benavides. The most favorable light that could be placed upon this petition or complaint is, that it simply asks for a recount of the ballots by the Executive Committee. It is plain in this State that there is no statute authorizing a recount of the ballots. When the executive committee

meets as a canvassing board, canvasses the election returns, declares the result of the election and adjourns, its duties are at an end, and it has no further authority to again meet and recanvass the election returns. Furthermore, the committee at no time has authority to recount the ballots, except where a valid election contest has been filed.

In 20 C.J., p. 193, § 244, we find the following quotation: "Recount. It is provided by some statutes that where the total of the entry of votes in the different columns opposite an office on the tally sheet do not balance with the total of ballots voted at the polling place, the ballots must be recounted for such office before the result is declared. However, such a provision is merely in the nature of an instruction to the election officers to recount the ballots before making a return; it does not authorize or permit them to reconvene on a day subsequent to the completion of the canvass and recount the ballots. After inspectors of election have once made a canvass of votes, they cannot be compelled or permitted to make a new one. Even where the returns are sent back to the inspectors because of omissions or clerical errors, they are forbidden to change or alter any decision before made by them. After an alleged illegal vote has been read and counted, the power of the election officers to reject it ceases."

And § 259, p. 203, reads as follows: "Ballots. In the absence of a statute conferring it, a board of canvassers has neither express nor implied power to recount the ballots. * * *"

It has been properly held by the Court of Criminal Appeals in Carroll v. State, 124 Tex.Cr.R. 180, 61 S.W.2d 1005, that after election officers have made return, ballot box cannot be opened, nor can ballots be used as evidence except in case of "contest" and then only in response to due process.

Article 3125, R.S.1925, as amended by Acts 1933, 43d Leg. p. 762, Ch. 225, § 10, Vernon's Ann.Civ.St. art. 3125, provides in part as follows:

"*Canvass of result.*

"At the meeting of the county executive committee, provided for in Article 3124, returns from the election precincts of the county shall be canvassed by the committee, and the result of the election declared by it. * * *"

It is plain that the returns referred to are the election returns as made by the precinct election officer. See Arts. 3123 and 3124, R.C.S.1925, as amended, Vernon's Ann.Civ.St. arts. 3123, 3124. Art. 3128, R.C.S.1925, makes it certain that the ballots are no part of the election returns from which the executive committee is to make its canvass.

These Articles of the statutes when construed in connection with the provisions of Arts. 3148 and 3149, R.C.S.1925, make it clear that the Executive Committee has no power to recount the ballots unless and until an election contest, based upon special allegations of fraud and illegality in the conduct of the election, is filed. These allegations must be clearly, precisely and specifically stated, and, further, the materiality of such frauds and illegalities must be shown. 20 C.J. p. 227, § 292; Taliaferro v. Lee, 97 Ala. 92, 13 So. 125; Territory ex rel. Sherman v. Board of Sup'rs of Mohave County, 2 Ariz. 248, 249, 12 P. 730; McCrary on Elections, Par. 437; Edwards v. Logan, Ky., 69 S.W. 800; Oxley v. Allen, 49 Tex.Civ.App. 90, 107 S.W. 945; Bigham v. Clubb, 42 Tex. Civ.App. 312, 95 S.W. 675; Altgelt v. Callaghan, Tex.Civ.App., 144 S.W. 1166; Garess v. Tobin, Tex.Civ.App., 261 S.W. 430; Clary v. Hurst, 104 Tex. 423, 138 S.W. 566.

Appellant's complaint, instead of being a specific charge of illegality and fraud, was in the most general terms imaginable. It seems that it would be impossible to prepare a complaint that would be more general. If the complaint in this case is a sufficient basis for an election contest, then a contest may be had in this State upon a general allegation of fraud in the election and a request for a recount. It is clear that this was never intended, because the statute, Art. 3148, above, clearly provides that any contest before the executive committee shall be had on specific charges of fraud and illegality in the conduct of the election, "*and not otherwise.*" In the absence of a proper complaint the action of the executive committee in recounting the ballots was unauthorized and a void proceeding, and the judgments of the County Executive Committee and of the District Court therein were ineffectual.

We are further of the opinion that even if we should hold the complaint legally sufficient, there were other errors committed during the trial which would

necessitate a reversal of this case, and as there is insufficient time for another trial, the case is moot, and regardless of the grounds on which we base our action, we come to the inevitable conclusion that the contest should now be dismissed.

Accordingly, the judgment heretofore entered herein will be set aside and judgment now entered dismissing this election contest and the proceedings therein, at the cost of appellee.

SLATTON, Justice (dissenting).

October 5th this Court handed down an opinion affirming the judgment of the trial court, but upon motion for rehearing a majority granted the motion and dismissed the proceeding. To this action the writer files this, his dissent.

The notice of contest filed before the committee (of which enough is herein quoted to show its sufficiency) was answered by Benavides, not by a plea to the jurisdiction, but by demurrers, general and special. The cause was heard before the committee and decided in favor of Orth, to which action Benavides appealed to the district court. After the statutory period of ten days allowed for filing a contest, Orth filed in the district court a contest, alleging in detail the same charges as were contained in his notice of contest filed before the committee. The trial court consolidated these proceedings. It is the view of the writer that in this no error is shown. Benavides had filed numerous special demurrers, some of which were sustained by the court and others overruled. The trial court undoubtedly has the authority to allow amendment in election contests, so long as no new matter is presented that is not contained in the notice filed before the committee. By a consolidation of these proceedings the trial court saved the time necessary for repleading in particularity usually required in pleadings, and did not allow any new matter not specifically complained of in Orth's notice filed before the committee. The proceeding being a trial before the court, the writer cannot perceive error in this action.

The majority hold that the notice filed by Orth was not sufficient to invoke the jurisdiction of the committee and the trial court to hear the contest. It is first noted that Benavides in his brief and in the oral argument made no such contention. He filed no plea to the jurisdiction before the committee nor the trial court. In fact, during oral argument here counsel for Benavides stated he did not contend that Orth's pleading before the committee was subject to general demurrer. His complaint here was that the trial court erred in overruling special exceptions to that part of the pleading of Orth wherein it was charged that election officials in Precinct No. 1 had miscalled and miscounted votes and sought to require Orth to charge the particular vote miscalled and miscounted and the specific election official who was guilty of such conduct. The trial court properly overruled these special exceptions.

Article 3148, R.C.S.1925, provides for a primary contest of an election before the executive committee if the candidate shall, "within five days after the result has been declared by the committee or convention, cause a notice to be served on the chairman or some member of the executive committee, in which he shall state specifically the ground of his contest; * * * If special charges of fraud or illegality in the conduct of the election, or in the manner of holding the convention * * * are made," the committee shall hear the contest, etc.

Orth, within the five days, filed a contest in which he charged "that the result as shown by the election returns was illegal and incorrect and that a certificate of nomination issued thereon would be illegal and fraudulent, in that the same is the result of counting the votes and ballots that were wrongfully and illegally counted and the counting of votes and ballots that were wrongfully and illegally cast. That the officers of the election, or some of said officers, wrongfully and illegally miscounted votes and ballots, and threw out and did not count legal ballots cast and voted for contestant, and this contestant further says that if and when the illegal, unlawful and fraudulent votes so cast are eliminated, and the ballots which were cast are correctly, legally and rightfully counted, it will be found that this contestant has and holds a clear majority of all of the legal and lawful votes cast at said election for such office."

It has been many times decided that a contest of an election is not a civil case and is governed by the statutes which authorize such proceedings. The statute above quoted provides for a contest upon specific allegations of fraud and illegality in the conduct of an election. The allega-

tions which were made before the committee mean to the writer that electors cast their ballots for Orth and the election officials counted them for Benavides, and that electors cast their ballots for Orth and the election officials failed to count them for him. If these allegations are true it is obvious that such facts show the most pernicious fraud that could be committed in the conduct of elections. This is true regardless of whether the election officials miscounted the ballots through inadvertence, accident, mistake, or fraud; the result was the same to Orth in either event. From the very nature of such conduct it appears to the writer that a victim of such practice could not be expected to specify the particular election official responsible for that conduct, or the specific elector's ballot which was miscalled or miscounted. To demand this would demand the impossible. If such ballots were intentionally miscounted by the election officials it involved criminal offenses and the means for ascertaining such conduct are almost if not completely foreclosed against the victim of such practice. Therefore, it is my humble opinion that the allegations above quoted were sufficient to challenge the jurisdiction of the committee and of the district court upon the appeal from the committee. These allegations being sufficient under the statute authorizing the contest, the trial court did not err in overruling and not sustaining the special demurrers directed thereto.

In the case of State ex rel. R. C. Jennett v. Wm. P. Owens, 63 Tex. 261, the Supreme Court of this State sustained the jurisdiction of the district court in a quo warranto proceeding, in which the information challenged is stated by the Supreme Court in these words: "* * * at an election held in Galveston county, on the 4th day of November, 1884, the relator was elected to the office by receiving a plurality of the popular vote, but that Owens had obtained the certificate of election, and had usurped, and was holding and executing the office without authority of law. The information charges fraud in the returns of election made from several of the precincts of the county, in that the votes of these precincts was not properly counted by the presiding officers. It alleges that had the vote been properly counted and returned at these precincts, the returns would have shown that Jennett had received a plurality of all the votes cast for sheriff * * *."

In the similar case of Gray v. State, 19 Tex.Civ.App. 521, 49 S.W. 699, it is said [page 701]: "But, in support of the demurrer, the appellant relies mainly upon the failure of the petition to allege fraud with reference to the official returns, because only for fraud could the returns be set aside and resort had to the ballots as secondary evidence. There were other allegations in the petition with regard to illegal voters who were alleged to have voted for the respondent in sufficient numbers to have changed the result of the election. These allegations were sufficient to sustain the petition, even if the others were insufficient to authorize the introduction of the ballots in evidence. The averments with respect to returns as to each of wards 2 and 3 were substantially that the returns were false, deceptive, and misleading, and that a fair, correct, and true count, tally, and return of the votes as they were actually cast would show a much smaller vote for the respondent, with the addition, as to ward 3, that one of the officers was so excessively drunk that he could not perform his duties and did not tally certain votes cast for the relator. We think these averments, in the absence of a special exception, were sufficient to give the relator the right to controvert the returns by the introduction of the ballots themselves. It having been alleged that the returns were false, and showed a much smaller vote for respondent than he had received, it was unnecessary to allege that the officers of the election had acted fraudulently in making them; for the injury to the relator would have been the same, and the ballots, if they came from proper custody, were admissible as primary evidence of the result to controvert the returns."

In the early case of Ashford v. Goodwin, 103 Tex. 491, 131 S.W. 535, Ann.Cas. 1913A, 699, it was noted that the statute providing for a primary election contest was meager, but it was intimated that the courts should adopt reasonable rules in order that such proceedings should be determined in accordance with the statutes authorizing them.

In the instant proceeding the trial court sustained several special exceptions, and I think properly overruled the ones complained of in this proceeding. The requirement

of the statute that grounds of contest shall be specifically alleged is made for the purpose of apprising the opposing candidate of the nature and kind of proof he will be called upon to meet. The allegations above quoted certainly put Benavides upon notice that he would be required to prove that no ballot cast for Orth had been miscalled for him, and that all ballots which had been cast for Orth had been properly called for him. Benavides complains that the trial court, under the evidence presented by Orth, had not the right to go into the ballot boxes and give effect to the ballots and disregard the election returns. The real basis of Orth's proof was that in election precinct No. 1, of Brooks County, the tally clerks were behind on two or three occasions and were instructed to catch up by adding votes thereto. The evidence was almost exactly the same as in the case of Henderson v. Albright, 12 Tex.Civ.App. 368, 34 S.W. 992, and in that case the court say [page 994]: "When the count was concluded by them, there were discrepancies existing between the tally sheets of the different clerks of the election, which discrepancies were attempted to be reconciled by guessing at the result, and changes made accordingly; and it is evident, from the evidence, that it was impossible for the correct result to have been ascertained by such proceedings."

As a further basis for the opening of the ballot boxes by Orth he tendered proof that Benavides, when the contest was filed before the executive committee, contacted one of the members of that committee and asked him not to go into the ballot boxes and stated to him that if he did that he would be sunk. In addition to this, Orth presented proof of the integrity in the safekeeping of the ballots since the election, and thereupon the trial court entered the ballot boxes and Benavides and Orth stipulated that a counting of the ballots contained in Precinct No. 1 would show the same result as that found by the executive committee when that committee tried the contest before it.

Article 3149 provides that either the court or the executive committee may, if in its opinion the ends of justice require it, unlock and unseal the ballot boxes used in the precinct where fraud or illegality is charged to have been used, and examine their contents, after which they shall be sealed and delivered to the county clerk.

Article 3150 provides for the committee to certify their findings, etc.

Thus it is seen that under the statutes quoted it is within the sound discretion of the committee or the trial judge. Under the proof presented by Orth, if the committee or the trial judge, in the exercise of the discretion given by the statute, had decided not to go into the boxes, an appellate court could not require them so to do. Lueders et al. v. Ehlinger, Tex.Civ. App., 31 S.W.2d 1099; it being a discretionary act of the committee or judge. Orth did present some evidence, which was held to be sufficient in the Henderson Case, supra, and which was deemed sufficient by the committee and the trial court. The committee and the court, upon opening the ballot boxes, found that Orth had received a clear majority, and that the election returns were false and incorrect. It appears to the writer that an appellate court should not now say that the committee and the trial court abused their discretion.

Complaint is also made that the trial court erred in allowing the ballots to be introduced in evidence because it was not shown that such ballots had not been changed, tampered with, or altered. The proof showed that the ballot boxes, upon the completion of the election, were locked and delivered to the committee, and by them to the county clerk. The only evidence of miscounting the ballots occurred in precinct No. 1. The boxes used by this precinct were locked and the keys kept by the presiding judge, and such boxes turned over to Mr. Orth, the present county and district clerk, and by him kept in a locked vault. This was a sufficient prima facie showing of the integrity of the ballot boxes and the ballots contained therein. It was so held in the Henderson Case, supra, and by the Supreme Court in the Gray Case. The opinion of the Supreme Court being in 92 Tex. 396, 49 S.W. 217.

Then, too, the actual ballots upon the recount before the committee, and agreed to by the parties before the trial court, showed that Orth received a majority for the office to the extent of thirty-five votes, and that the election returns were incorrect. The effect of the holding of the majority is to deny the right of contest when the means used in the conduct of an election was the miscounting or miscalling of votes cast by electors. It is the writer's opinion that the statute authorizing such

contest intended to furnish a right of redress when such a means is used. Thus, in the instant proceeding, a majority of the electors of Brooks County cast their ballots for Orth, and the election officials in precinct No. 1, through mistake or otherwise, miscalled or miscounted these ballots. The committee and the trial judge corrected these errors and declared Orth the nominee. The majority of this Court, for insufficient reasons to the writer, overturned those judgments and thereby thwart and nullify the will of the majority of the electors.

Complaint is also made by Benavides that the trial court erred in sustaining a demurrer to a part of his answer which referred to his allegation that the ballots had been tampered with, altered, or changed. This matter is shown by a bill of exceptions #1, which has the following qualifications, to-wit:

"The above and foregoing Bill of Exception No. 1 having been presented to and considered by the Honorable L. Broeter, Judge of the 79th Judicial District of Texas, on this the 22nd day of September, A. D. 1938, and the undersigned having examined said bill the same is approved with the following qualifications:

"The trial of this case was begun on September 8th, 1938, and on September 10th, 1938, this court on his own motion recessed the trial of this case until September 20th, 1938, when the trial of this case was resumed. Although the ballot boxes were opened and the ballots recounted on September 10th, 1938, contestee never requested permission to examine and never examined the ballots in said boxes in Precinct Number One (1), Brooks County, Texas, until September 21st, 1938, Numerous voters were called to testify as to the way they voted, who testified they had voted for Benavides and their ballots also showed they voted for Benavides. Contestee has not at any time requested a recess of the trial of this case and has been ready at all times to proceed with the trial.

"The court heard 64 witnesses, offered by contestee from September 20th, 1938, to September 22nd, 1938, who testified as shown in the statement of facts beginning on page 140 of said statement of facts, which testimony is hereby referred to and incorporated herein for all purposes, and the court then being of the opinion that the testimony of said witnesses did not show any alteration or change of the ballots or tampering with the ballot boxes in voting Precinct Number One (1), Brooks County, Texas, and said contestee, by his attorneys, having admitted in open court (1) that he did not know what any additional witnesses to be offered by him would testify to, (2) that he had not made any effort to ascertain what said witnesses would testify to; and contestee stated he would call all of the voters who had voted in Precinct Number One (1), Brooks County, Texas, at the Primary Election held on said county on July 23rd, 1938, as witnesses, the court, was of the opinion that such amendment and the testimony of such witnesses would result in unnecessary delay, without benefit being apparent to contestee, and the court thereupon overruled said motion to amend offered by contestee.

"L. Broeter
"Judge District Court, Brooks County, Texas."

The real complaint seems to be that the trial court erred in sustaining this demurrer and not allowing further proof offered by Benavides to sustain such allegations. The ballots were first available to Benavides on the 9th day of August, 1938, at the time of hearing the contest before the committee. The trial in the district court was begun on the 8th day of September, 1938, and continued until the 10th day of said month, and then recessed until the 20th day of September, 1938, and continued until the 23rd day of September, during which time the court heard some sixty-two witnesses. The witnesses, when presented with their ballots, testified that such ballots reflected the correct vote as cast by them, except possibly two electors. Thus, save the exceptions noted, Benavides, from the 9th day of August until the end of the trial, was unable to offer any evidence of tampering, alteration, or change of the ballots introduced in evidence, and stated through his counsel that he did not know of any witness who would support such a charge. In this situation, the writer is of the opinion that the trial court was correct in refusing to hear further testimony without assurance from Benavides, or his counsel, that such evidence would probably be offered. It was evidently the opinion of the trial court that Benavides in attempting to call all of the voters who cast their ballots in precinct No. 1 (more than a thousand) was for delay and without any expectation or possibility of presenting any evidence to show tampering, changing or alteration of ballots.

108

Benavides well knew, when served with the notice of contest by Orth, prior to August 9th, that he would be called upon to meet proof that the ballots would show a different result than the returns of the election. If the ballots had been altered or changed, the burden of showing such facts was upon Benavides. The trial court was confronted with the knowledge that the general election was to be held upon November 8, 1938, and that the trial of this case must be finally determined by an appellate court within at least thirty days prior to November 8, 1938. It was the trial court's duty to determine the case with dispatch, having in mind the rights of the parties to the contest. It is the writer's opinion that the trial court, with full knowledge of his responsibility, acquitted himself with judicial learning and ability and, in a fair and impartial manner, gave to the parties a fair trial. Therefore, under the well settled decisions of our Supreme Court, Orth has made specific allegations of fraud and illegality in the election returns, and having proved proper custody of the ballots, was entitled to introduce the ballots in evidence. The ballots showing that Orth received a majority of all the legal votes cast and Benavides having failed to show any alteration, tampering or change of the ballots, the trial court was correct in declaring Orth the nominee for the office of county and district clerk of Brooks County.

For these reasons the writer believes the judgment of the trial court should be affirmed, and thus enters his dissent to the judgment of the majority.