THE ATTORNEY GENERAL
OF TEXAS
AUSTIN 11, TEXAS


GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXD
ATTORNEY GENERAL

Honorable A. A. Miller
County Attorney
Newton County
Newton, Texas

Dear Sir:

Opinion No. O-2853
Re: The holding of a local option
liquor election on general elec-
tion day, together with related
questions.

Your letter of October 23, 1940, recites that the
commissioners' court of your county has called a local option
election for the 5th day of November, 1940, which is general
election day, to determine whether or not the sale of liquors
within the county shall be legalized. In connection therewith,
you propound two questions stated by you as follows:

"1. Can a Commissioners Court order an elec-
tion on the question of the sale of intoxicating
liquor in a dry County to be held on General
Election day November 5, 1940, at the same time
and polling places that will be used for the
General Election and supervised by the same elec-
tion officials?

"2. If the answer to question number one is
'yes', will the Court be required to furnish
separate ballot boxes and poll books for the liquor
law election or can the liquor law ballots be dropped
in the same ballot boxes as the General Election
ballots and be listed and counted in the General
Election books?"

The statutes regulating local option liquor elections
and general elections do not contemplate or make specific pro-
vision for the holding of a local option election and a general
election at the same time and in the manner described in your
letter. Nevertheless, there is no prohibition against such be-
ing done.

The courts of Texas have established liberal prece-
dents pertaining to elections and consistently hold that the

statutory regulations are directory rather than mandatory.
It is said in Texas Jurisprudence, Vol. 16, para. 5, page 10:

"Thus the Supreme Court has said that the
ultimate test of the validity of an election is
involved in the question:  Did the qualified
electors at the time and place designated, act-
ing in concert, either actively or by acquies-
cence, hold an election and cast their votes in
the ballot box; and has this been done in a
manner sufficiently conformable to the direction
of the law as that the true result can be arriv-
ed at with reasonable certainty?"

In Miller vs. Tucker, 119 SW 2d 92, 94, it was held:

"Appellees' contention that the election
was rendered invalid because J. Roy Lawson,
the presiding officer, was at the same time
mayor of Newton is also without merit.  There
was no showing or contention that the presence
of Mr. Lawson as presiding officer in any way
improperly affected the result of the election.
No objection was made to Mr. Lawson serving.
The election was fairly and honestly held and,
so far as shown by the record, the votes were
correctly counted and returns accurately made.
Article 2940, Vernon's Ann. Civ. St., is directory
only and an election is not vitiated by the fact
that the election judge acting under the color
of authority did not possess the required quali-
fications in the absence of a showing of fraud
or misconduct.  Hill v. Smithville Independent
School Dist., Tex. Civ. App. 239 S.W. 987; Gayle
v. Alexander, Tex. Civ. App., 75 S.W. 2d 706."

In Orth vs. Benevides, 125 SW 2d 1081, 1084, there
is quoted with approval the following language by the Supreme
Court in Fowler vs. State, 68 Tex. 35, 3 SW 255:

"Electors must not be deprived of their
votes on account of any technical objection to
the manner in which the election has been held,
or for any misconduct on the part of its presid-
ing officers, if these have not affected the true
result of the election.... This would be to de-
prive citizens of a great constitutional privilege

for a mere informality, - to place it within the
power of a few persons to defeat the right of
suffrage altogether. The very means provided to
insure a fair and proper election might become
an instrument of fraud and dishonesty. Hence,
all such irregularities of the officers in the
conduct and return of the election as have not
prevented the electors from a free and fair exer-
cise of the right of suffrage, and from having
their votes fairly estimated for the candidate
of their choice, and which the law has not de-
clared shall set aside their ballots, must be
treated as informalities not vitiating the elec-
tion. This principal is to be taken with the
qualification that it must be made to appear that
the neglect or misconduct of the officers has not,
in the particular case, prevented an honest and
fair election."

"Adverting to the subject at hand in the light of
these well-settled principles, it is observed that Section
33, Article I, of the Texas Liquor Control Act (Article 666-33
V.A.P.C.) stipulates that when the commissioners' court has
ordered an election it shall be its duty to order such elec-
tion to be held at the voting places in the county within a
specified time and "that said court shall appoint such offi-
cers to hold such election as now required to hold general
elections."

It is also to be noted that Section 36, Article I,
of this Act, states that "the officers holding such election
shall, in all respects not herein specified, conform to the
general election laws in force regulating elections.... The
provision of the general election laws shall be followed in
calling and conducting said election where not inconsistent
herewith."

The holding of a local option election on general
election day is, of course, calculated to result in more voters
participating therein and a consequent greater expression of
the public will. The desirability of this is apparent. The
expediency and economy incident thereto is likewise manifest.
Such is not prohibited and it is our opinion that neither elec-
tion would be invalid if each is otherwise conducted so as to
secure a fair and honest election.

Article 2937, et seq., R.C.S., provides for the appointment by the commissioners' court of election judges who in turn appoint the election clerks. We can perceive no reason why these election officials could not, at the same time, supervise both a local option liquor election and a general election.

We therefore hold in answer to your first question that the commissioners' court may order an election on the question of the sale of intoxicating liquor in a dry county to be held on general election day, November 5, 1940, at the same time and at the same polling places, and that each election may be under the supervision of the same election officials.

With reference to the use of the same ballot boxes, it is to be noted that the statutory plan pertaining to ballot boxes comprises four different boxes with each serving a particular purpose. Ballot box No. 4 receives defectively printed ballots together with defaced and mutilated ballots, and Article 3016, R.C.S., prescribes the purpose of ballot boxes Nos. 1, 2 and 3 as follows:

"At the expiration of one hour after voting has begun, the receiving judges shall deliver ballot box No. 1 to the counting judges, who shall at once deliver in its place ballot box No. 2, which shall again be opened and examined in the presence of all the judges and securely closed and locked; and, until the ballots in box No. 1 have been counted, the receiving judge shall receive and deposit ballots in ballot box No. 2. Ballot box No. 1 shall, on its receipt by the counting judges, be immediately opened and the tickets taken out by one of them, one by one, when he shall read and distinctly announce while the ticket remains in his hand, the name of each candidate voted for thereon, which shall be noted on the tally sheets, and shall then deliver the ballot to the other counting judge, who shall place the same in box No. 3, which shall remain locked and in view until the

counting is finished, when said box shall be return-
ed with the other boxes, locked and sealed, to the
county clerk. Ballot boxes Nos. 1 and 2 shall be
used by the receiving judge and the counting judge
alternately, as above provided, as often as the
counting judge has counted and exhausted the ballots
in either box."

Ballot box No. 3 therefore is the locked and sealed
repository for the ballots after they have been counted and
until the ballots have been destroyed in accordance with
law or are subjected to examination and inspection in a
manner incident to a proceeding contesting the election as
specifically provided for by the Legislature.

It is manifest that if both the ballots cast in
the local option election and in the general election are
deposited in ballot box No. 3 after being counted, the ballots
cast in both elections would be subject to an exposure, however
casual or incidental it might be, in the event of a contest
of either election whereunder the ballots cast in the parti-
cular election being contested would be subject to examina-
tion and inspection.

In Carroll vs. State, 61 SW 2d 1005, the constitu-
tional safeguard surrounding the ballot was recognized and
enforced. It was pointed out that ballots cast in an election
may be opened and inspected only in a manner, and incident to
a proceeding, authorized by the Legislature. The court de-
clared:

"The mandate of the Constitution of this
State that the vote be by ballot must be con-
strued as meaning a 'secret ballot'...."

Anything that would relax this protection to the
voter, namely, that his ballot in a particular election shall
be kept secret, is to be scrupulously avoided. Accordingly,
if the use of the same ballot boxes in the holding of a local
option election and a general election at the same time would
in any way permit a ballot cast in either election to be ex-
posed other than in a manner, and incident to a proceeding,
authorized by the Legislature, it should not be done. We
therefore regard it as indispensable that the commissioners'
court shall at least furnish a separate ballot box No. 3 when
it has ordered a local option election to be held at the same
time as a general election. We deem it more desirable and
appropriate, moreover, that separate ballot boxes Nos. 1, 2
and 4 also be furnished, relating to each election, although

there is no compelling objection to the use thereof as exists with reference to ballot box No. 3.

It would not appear necessary that separate lists of the voters be furnished but the tally and poll lists of the votes cast in each election, and the returns of each, would necessarily have to be separate and distinct.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  /s/ Zollie C. Steakley

Zollie C. Steakley
Assistant

ZCS:AW   SC

APPROVED NOV 1, 1940

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee

By_____BWB_____
Chairman